LINCOLN FIRST BANK OF ROCHESTER, Appellant, v DAVID SIE-GEL, Respondent.

Fourth Department, December 16, 1977

APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle (William S. Thomas, Jr.,* of counsel), for appellant.

*Henry M. Hille* for respondent.

**OPINION OF THE COURT**

MOULE, J. P.

Plaintiff, Lincoln First Bank of Rochester (Lincoln), commenced this action in February, 1975 against defendants, David Siegel and Kenneth Quigley, to recover the sum of $46,000 plus interest allegedly due and owing on several notes and guarantees. Defendants had been associated in a construction enterprise known as the Central Development Company until November or December of 1974 and were involved under contract with the State of New York in a project located on Highway 81 in Binghamton. Lincoln served an order of attachment dated February 4, 1975 on the New York State Commis-

sioner of Transportation, in an apparent effort to attach the highway construction contract involving defendant Siegel, a nonresident.

Siegel had signed three promissory notes totaling $46,000 on December 9, 1974 at Lincoln's Hammondsport branch bank. As he was leaving the bank, he was arrested on charges of second degree grand larceny as a result of criminal complaints signed by Quigley, who accused Siegel of issuing bad checks to the Central Development Company.

In an amended verified complaint, Lincoln asserted four causes of action, three of which are upon the notes executed by Siegel on December 9, 1974 and the other upon a guarantee executed by defendant Quigley.[1]

Siegel, in his second amended verified answer,[2] denied the material allegations of Lincoln's complaint, asserted three affirmative defenses and interposed a single counterclaim. His counterclaim concerns two series of events: first, his arrest, arraignment and temporary incarceration on charges of second degree grand larceny and, second, Lincoln's attachment and attempted levy upon the State construction contract. Under this counterclaim Siegel alleged that the charge placed against him by Quigley was that he had issued bad checks to be deposited in a checking account maintained at Lincoln's bank in the name of David Siegel doing business as Central Development Co., Quigley claiming that this was a partnership account; that upon his arraignment in Hammondsport, the vice-president of Lincoln's Hammondsport branch was summoned and asked to verify his assertion that he maintained a checking account with Lincoln in the name of David Siegel doing business as Central Development Co., and not as a partnership or in any other form; that the vice-president, though aware that Siegel maintained such an account, refused to verify his assertion to the presiding Town Justice, thereby intentionally depriving him of a defense and causing him to

---

1. Quigley defaulted and judgment was taken against him on March 28, 1975. The action against Siegel, who had served an answer dated March 12, 1975, was ordered severed. Siegel's answer contained only denials. Thereafter, Lincoln moved for summary judgment, which motion was granted on August 4, 1975 unless within 30 days Siegel were to serve an amended answer. Siegel served a timely amended answer containing two affirmative defenses, following which Lincoln served its amended complaint.

2. This second amended answer, dated September 16, 1976, was served more than one year after Siegel's first amended answer of July 22, 1975. The circumstances surrounding the service of this pleading do not appear in the record.

be incarcerated until he could post bail; that, thereafter, Lincoln connived and collusively co-operated with Quigley by commencing this lawsuit claiming that a partnership existed[3] and, when Quigley defaulted, by taking judgment and attempting to levy on separate and distinct proceeds of the State contract which were in a partnership name; and that the attachment was fraudulently obtained and is void.

Finally, Siegel alleged that "as a result of [his] false arrest * * * and the publicity attendant thereon, he was caused irreparable damage in obtaining financing and bonding for his various enterprises, he was caused severe humiliation and embarrassment, the illegal attachment caused him severe financial loss of contract proceeds, and he was otherwise damaged".

Lincoln served a verified reply, in which it set up the following seven affirmative defenses to Siegel's counterclaim: (1) that the counterclaim is barred by the Statute of Limitations; (2) that Lincoln did not institute criminal proceedings against Siegel; (3) that there was probable cause for the commencement of criminal proceedings against Siegel; (4) that Siegel was arrested pursuant to a duly issued warrant; (5) that the criminal proceedings were not terminated in favor of Siegel on the merits; (6) that Siegel lacks legal capacity to sue upon an alleged tort to a separate partnership and (7) that Siegel's counterclaim fails to state a cause of action.

Siegel moved to dismiss the reply to his counterclaim and Lincoln cross-moved for summary judgment dismissing Siegel's counterclaim but not on its causes of action against Siegel.

Siegel's attorney submitted an affidavit in support of his motion to dismiss Lincoln's reply to his counterclaim. However, neither Siegel nor his attorney submitted papers in opposition to Lincoln's cross motion for summary judgment. Significantly, the affidavit that accompanied Siegel's motion set forth few substantial supporting facts and contained

---

3. In his affirmative defenses Siegel alleged, *inter alia,* that Lincoln, by its agents or employees, fraudulently altered two of the promissory notes sued upon in this action intending thereby to change his individual obligations into partnership indebtedness, so as to enable Lincoln to attach proceeds of the highway construction contract to which Siegel and Quigley were entitled in a partnership capacity. These allegations are realleged under Siegel's counterclaim. It is not necessary for us to consider the other allegations in the affirmative defenses as Lincoln's summary judgment motion is on Siegel's counterclaim only.

mostly conclusory allegations and arguments of law. One argument advanced by Siegel's attorney in this affidavit was that the first affirmative defense in Lincoln's reply, the Statute of Limitations, had no merit inasmuch as the limitations period for prima facie tort and fraud had not yet run. This was Siegel's first mention of prima facie tort in connection with his counterclaim, which had previously been framed in his second amended answer in terms of "false arrest" and "illegal attachment".

Special Term granted Siegel's motion to dismiss Lincoln's reply in part;[4] it denied Lincoln's cross motion for summary judgment dismissing Siegel's counterclaim, because of the existence of questions of fact. The court found it unnecessary to reach the timeliness of the counterclaim because, on a trial, the proof might raise a question as to whether Siegel was the victim of a prima facie tort.

Although the court found that no specific item of damage was alleged, it determined that it would be improper to strike the counterclaim at this stage. Inasmuch as Siegel had not yet furnished a bill of particulars pursuant to Lincoln's demand, the court suggested that compliance with the demand would resolve this difficulty. It is from the denial of its cross motion for summary judgment that Lincoln appeals.

A motion for summary judgment shall be granted if, upon all the papers and proof submitted, a cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party (CPLR 3212, subd [b]). To defeat summary judgment, the opponent must present evidentiary facts sufficient to raise a triable issue of fact, and averments merely stating conclusions, of fact or law, are insufficient *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285; *Strenk v Rausch Equip. Corp.,* 58 AD2d 986).

Lincoln's first contention on this appeal is that the harm asserted in the "false arrest" portion of Siegel's counterclaim is that caused by malicious prosecution, and not false arrest or imprisonment. In effect, Lincoln asserts that the cause of action which this court should be examining with respect to

4. The court struck Lincoln's first affirmative defense of the Statute of Limitations to the extent that Siegel should prove a cause of action in prima facie tort at trial; it struck Lincoln's fifth affirmative defense that the criminal proceedings had not terminated in favor of Siegel on the merits, since Lincoln had stipulated to a withdrawal of this defense; and it allowed the other five affirmative defenses to stand.

Siegel's arrest and prosecution on this cross motion for summary judgment should be malicious prosecution, and not false arrest or imprisonment.[5]

■ The question as to whether false imprisonment or malicious prosecution is the proper form of action to redress an improper arrest was answered in *Broughton v State of New York* (37 NY2d 451, 457-458, cert den *sub nom. Schanbarger v Kellogg,* 423 US 929). "The distinction between false imprisonment and malicious prosecution in the area of arrest depends on whether or not the arrest was made pursuant to a warrant. As noted in the Restatement, 2d, an unlawful detention gives rise to a cause of action for false imprisonment 'except where the confinement was by arrest under a valid process issued by a court having jurisdiction' (Restatement, 2d, Torts, § 35, comment *a;* Prosser, Torts [4th ed], § 11). When an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution." (See *Dillard v City of Syracuse,* 51 AD2d 432, 436, mot for lv to app dsmd 39 NY2d 1011.)

Since Lincoln, in its moving papers, produced the warrants pursuant to which Siegel was arrested, an action for malicious prosecution, and not false arrest or imprisonment, is the proper remedy.

Lincoln's second contention is that Siegel is barred by the Statute of Limitations on his failure to plead a cause of action in malicious prosecution within one year after entry of the order dismissing the criminal proceeding. In effect, Lincoln maintains that it is entitled to judgment as a matter of law on the basis of its affirmative defense of the Statute of Limitations.

An action for malicious prosecution (or false imprisonment) must be commenced within one year (CPLR 215, subd 3). This one-year period is computed from the time the cause of action accrues to the time the claim is interposed (CPLR 203, subd [a]). A counterclaim is interposed when a pleading containing it is served (CPLR 203, subd [c]). However, a claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences to

---

5. Siegel, in his brief, states that he does not allege either false arrest or malicious prosecution; however, we must evaluate the allegations as set forth in the pleadings (e.g., *Gutmann & Co. v Dan Riv. Mills,* 30 AD2d 646).

be proved pursuant to the amended pleading (CPLR 203, subd [e]).

Siegel's counterclaim was first pleaded in his second amended answer, dated September 16, 1976. He had been arrested and arraigned on December 9, 1974 and the criminal proceedings against him were terminated on March 8, 1975, after a preliminary hearing. This suit was commenced in February, 1975, with Siegel serving an original answer dated March 12, 1975 and a first amended answer dated July 22, 1975.

Lincoln argues that Siegel first set forth the circumstances surrounding his arrest under the counterclaim in his second amended answer on September 16, 1976; that Siegel's prior answers do not give notice of the transactions and occurrences to be proved pursuant to this portion of the counterclaim; that, therefore, the portion of Siegel's counterclaim relating to his allegedly improper arrest does not relate back in time to those earlier pleadings; that this part of the counterclaim was interposed on September 16, 1976; that this date is more than one year from the accrual of Siegel's cause of action for malicious prosecution, which occurred at the termination of the criminal proceedings on March 8, 1975; and that Siegel is barred from asserting that portion of his counterclaim relating to his arrest.

Lincoln's argument fails to take into account the statement contained in CPLR 203 (subd [c]), that a counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed. Here, Lincoln's original complaint was served in February, 1975, and its amended complaint served on August 21, 1975. Since Siegel's counterclaim was not barred on either of those dates, it is timely.

Special Term did not determine whether that portion of Siegel's counterclaim concerning his "false arrest" sufficiently alleged a cause of action for malicious prosecution to survive a motion for summary judgment. This is the question to which we must now turn. In order to prove a cause of action for malicious prosecution Siegel must show: (1) the commencement or continuation of a criminal proceeding by Lincoln against him; (2) termination of that proceeding in his favor; (3) the absence of probable cause for the proceeding; and (4) actual malice. He must also plead the lack of probable cause (see *Broughton v State of New York,* 37 NY2d 451, 457, *supra).*

■ With respect to the first element, Siegel alleged that his arrest "was totally false and maliciously done by Quigley and upon information and belief was done in cooperation with and with the knowledge of [Lincoln]", and that Lincoln's officer refused to make an assertion to the Town Justice concerning the nature of his checking account at his arraignment, depriving him of a defense to the charges. These are the only allegations bearing on the requirement that Lincoln must have commenced or continued criminal proceedings against Siegel. The affidavit submitted by Siegel's attorney provides no support for these allegations. In it, Siegel's attorney merely concluded that Siegel alleges that Lincoln caused the criminal proceedings to be instituted against him and that the arrest warrants in the criminal prosecution were issued after Lincoln's action and due to the fraud worked upon the court by Lincoln. No factual averment to sustain these conclusory allegations can be found in the record.

Lincoln, however, offered proof to the contrary. Attached to its attorney's supporting affirmation are the felony complaints and arrest warrants upon which Siegel was prosecuted. They show that Siegel was arrested and the criminal proceeding commenced on the complaint of Quigley alone. Furthermore, an affidavit of the vice-president of Lincoln's Hammondsport branch bank is offered. Lincoln's officer swears that he had not reviewed the felony complaints executed by Quigley for Siegel's arrest prior to their execution; that the complaints were neither prepared at his suggestion nor at his request, that he appeared at Siegel's arraignment after a call from the Town Justice; that he was not under subpoena nor was he sworn and asked to testify by the Town Justice or by any attorney for Siegel; that the conversation which took place was informal in nature; and that he was not represented by counsel.

Faced with affidavits and documentary evidence, Siegel has chosen to rely on bare assertions and conclusory allegations. He has failed to present any proof that Lincoln was responsible for placing or prosecuting the charges against him (see *Everson v First Trust & Deposit Co.,* 46 AD2d 722). Furthermore, in light of Quigley's sworn felony complaints, Siegel has also failed to demonstrate responsibility on the part of Lincoln for continuation of the criminal proceeding (cf. *Gregorio v Terminal Trading Corp.,* 39 AD2d 705). Siegel did not allege that the arraigning Town Justice would have dismissed the

charges preferred by Quigley upon an assertion by Lincoln's officer that he maintained a certain account with the bank in an individual rather than a partnership capacity. Indeed, it would be difficult to sustain such an allegation inasmuch as the felony complaints themselves make no reference to any checking account. Siegel's counterclaim, therefore, lacks a necessary element of the cause of action for malicious prosecution.

Additionally, Siegel has failed to present proof on two other required elements of malicious prosecution: lack of probable cause and actual malice. Siegel did not plead a lack of probable cause and offered no proof to overcome the presumption of probable cause that attached to this criminal proceeding. He has also failed to plead actual malice on the part of Lincoln, although he did plead the existence of malice with respect to Quigley. Accordingly, Siegel raises no triable issues of fact to defeat Lincoln's cross motion for summary judgment, and the counterclaim insofar as it purports to allege a claim of malicious prosecution for his "false arrest", is insufficient.

Siegel, recognizing that he has not alleged a cause of action for malicious prosecution, claims instead that his action is one for prima facie tort and/or fraud. Special Term's denial of Lincoln's cross motion for summary judgment was based on the possibility that Siegel could prove a cause of action for prima facie tort at trial.

Lincoln's third contention is that Siegel's cause of action for "false arrest" cannot be characterized as one for prima facie tort.[6] More particularly, Lincoln claims that the necessary elements of a cause of action for prima facie tort are not alleged in that portion of Siegel's counterclaim concerning his arrest.

■ ■ Prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful (*Ruza v Ruza*, 286 App Div 767, 769; see *Board of Educ. v Farmingdale Classroom Teachers Assn.*, 38 NY2d 397, 405-406; *Effective Communications West v Board of Coop. Educational Servs. of Cattaraugus*, 57 AD2d 485). An essential element of the cause

6. Lincoln also contended that conduct actionable under the traditional tort category of malicious prosecution cannot be made the subject of an action for prima facie tort in order to circumvent the application of a Statute of Limitations. In light of our determination that Siegel's claim for malicious prosecution, although factually insufficient, was nevertheless timely, we do not reach this contention.

of action is an allegation of special damages (e.g., *ATI, Inc. v Ruder & Finn,* 42 NY2d 454). Where special damages are required but are not shown, summary judgment will lie *(Bohm v Holzberg,* 47 AD2d 764; see *Motif Constr. Corp. v Buffalo Sav. Bank,* 50 AD2d 718, app dsmd 38 NY2d 894; cf. *Continental Air Ticketing Agency v Empire Int. Travel,* 51 AD2d 104).

■ Special damages must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts *(Zausner v Fotochrome, Inc.,* 18 AD2d 649; see 13 NY Jur, Damages, §§ 12-13). They must be fully and accurately stated *(Reporters' Assn. v Sun Print. & Pub. Assn.,* 186 NY 437, 442; *Continental Air Ticketing Agency v Empire Int. Travel,* 51 AD2d 104, 108, *supra).*

Here, Siegel alleged that as a result of his false arrest and the publicity attendant thereon, he was caused irreparable damage in obtaining financing and bonding for his various enterprises, he was caused severe humiliation and embarrassment, and he was otherwise damaged. These allegations are couched in broad and conclusory terms. Siegel did not allege how he was damaged in obtaining financing and bonding; he did not allege who denied him such financing and bonding or what enterprises were involved; nor did he allege in what amounts he was specifically injured as a result of these refusals. More importantly, Siegel failed to support his allegation of special damages by offering any evidentiary facts to identify by sufficient particularity actual losses in opposition to Lincoln's cross motion for summary judgment.[7]

Lincoln's final contention is that Siegel does not state an action for malicious prosecution in the "illegal attachment" portion of his counterclaim because there was no actual interference with his property.

■ An action for malicious prosecution may lie where a civil action has been instituted against a person and, as an incident thereof, resort is had to a provisional remedy, such as arrest, attachment, or injunction, maliciously and without probable cause, which interferes with his person or property *(Chappelle v Gross,* 26 AD2d 340). However, the interference must be real

---

7. Special Term suggested that Siegel's failure to allege specific damages might be remedied if he were to provide a bill of particulars pursuant to Lincoln's demand. It is clear, however, that a bill of particulars cannot be used to supply an essential allegation which is lacking in a pleading *(Lewis v Village of Deposit,* 40 AD2d 730, affd 33 NY2d 532).

and actual, and not imaginary *(Schulman v Modern Ind. Bank,* 178 Misc 847 affd 266 App Div 833).

█ Siegel alleged that the attachment of the State contract by Lincoln caused him severe financial loss of contract proceeds. He offered no further proof, by affidavit or otherwise, of such financial loss. Lincoln, on the other hand, in support of its cross motion for summary judgment, presented a portion of Siegel's cross-examination at his examination before trial:

"Q. Did the State have on hand funds you felt you were entitled?

"A. There were funds that we found but people like the IRS stepped in.

"Q. So to your knowledge at no time did anyone from New York State inform you moneys had been paid to Lincoln First or would be available if Lincoln First had not got there?

"A. Lincoln First would never get any funds there at all. The whole thing was too complicated in settlement."

By supporting affirmation, Lincoln's attorney further asserted that the attachment had no effect on the construction project; that the damages incurred by Siegel were the result of improper construction practices by Quigley; and that prior to the imposition of any order of attachment, the Internal Revenue Service had already levied in an amount in excess of any possible proceeds to Lincoln.

In light of Siegel's own statement, to the effect that Lincoln would never get any funds at all from the attached contract, and the affirmation of Lincoln's attorney, that the attachment had no effect on the construction contract, it was incumbent upon Siegel to raise triable issues of fact concerning interference with his property. This he failed to do.

Nevertheless, Siegel claims that this portion of the counterclaim, for illegal attachment, also forms the basis for an action in prima facie tort. This claim, however, suffers from the same defect in pleading and proof that exists with respect to Siegel's assertion that the part of his counterclaim relating to his arrest states an action in prima facie tort, viz., no special damages are present. Here, not only did Siegel fail to show special damages, he failed to demonstrate a factual basis for any damages at all. Therefore, an action for prima facie tort does not lie with respect to this part of the counterclaim either.

Since Siegel has failed to raise any triable issue of fact with

respect to malicious prosecution, prima facie tort, or any other cause of action,[8] summary judgment should be granted to Lincoln dismissing Siegel's counterclaim.

CARDAMONE, SIMONS and DILLON, JJ., concur.

Order unanimously reversed, without costs, cross motion granted and counterclaim dismissed.

---

**8.** Siegel also refers to a cause of action for fraud; yet, he presents no theory upon which a separate claim of fraud can be established under these circumstances. He failed to set forth with sufficient particularity the requisite allegations concerning representation of a material existing fact, falsity, *scienter*, deception and injury (see *M. B. L. Distrs. v Kahn*, 58 AD2d 806; *Mishkin v Dormer*, 57 AD2d 795).