Joseph ALEXANDER, Sr., and Esther Alexander, Plaintiffs–Appellants,

v.

UNIFICATION CHURCH OF AMERICA, a/k/a Holy Spirit Association for the Unification of World Christianity, a/k/a Creative Community Project, a/k/a New Education Development Corp., Neil Salonen, Sun Myung Moon, and Unknown Others (including but not limited to Does 1–100), Defendants–Appellees.

No. 72, Docket 80–7324.

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1980.

Decided Nov. 3, 1980.

Paul Traub, New York City, for plaintiffs–appellants.

Richard I. Wolff, O'Sullivan, Wolff, Karabell & Graev, New York City, for defendants–appellees Unification Church and Salonen.

Julian W. Friedman, New York City (Charles A. Stillman, Stillman & Friedman, P. C., New York City, of counsel), for defendant–appellee Moon.

Before FEINBERG, Chief Judge, LUMBARD and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This case arises out of the age–old conflict between parents and their offspring occurring when the latter affiliate with a new, and perhaps different, sect that at least purports to be religious in nature. Appellants are so–called "deprogrammers" who work on behalf of parents in what they characterize as an effort to restore new converts of unorthodox religious groups to society by dissuading them from their new–found beliefs.[1] In this case the deprogrammers have brought suit against the Unification Church of America ("Unification Church"), its president, Neil Salonen, and its leader, Sun Myung Moon. The action was begun after, and partly in response to, a suit in the United States District Court for the Southern District of New York,[2] which was filed in the name of, if not actually initiated by, a young adult member of the Unification Church whose parents had sought to have "deprogrammed." After defendants–appellees moved to dismiss this case below for failure to state a claim and for insufficiency of service of process, plaintiffs–appellants moved to consolidate the suit with one brought by Theodore Roosevelt Patrick, Jr., which was making similar claims for relief against the same parties. The United States District Court for the Southern District of New York, John M. Cannella, Judge, not ruling on the motion to consolidate, simply dismissed appellants' complaint for failure to state a ground upon which relief could be granted. The lower court dismissed Patrick's complaint for failure to state a claim and for lack of subject matter jurisdiction. Only Joseph Alexander, Sr., and Esther Alexander appeal. We reverse and remand.

## THE DECISION OF THE COURT BELOW

■ The court below found that service on appellees Unification Church and Moon was insufficient, but properly declined to dismiss the complaint against them on that ground because there may be other means available to effect valid service of process. See *Hill v. W. Bruns & Co.*, 498 F.2d 565, 568 (2d Cir. 1974); *Grammenos v. Lemos*, 457 F.2d 1067, 1071 (2d Cir. 1972). The court did not grant appellants an opportunity to make proper service, however, because it went on to consider the merits and dismiss the complaint on substantive grounds.

The complaint was in four counts, the first labelled "maintenance," the second "42 U.S.C. § 1985(3)," the third "42 U.S.C. § 1986," and the fourth "intentional infliction of emotional distress." Count One, the "maintenance" claim, referred to the earlier filed and still pending lawsuit, allegedly brought in name only by Wendy Helander, *Helander v. Patrick*, Civ. No. 77–2401 (S.D. N.Y., filed May 16, 1977) (Lowe, J.), in which Ms. Helander sought $3 million in compensatory damages and $6 million in punitive damages, as well as injunctive relief, under 42 U.S.C. § 1985, 42 U.S.C. § 1983, and Section 40–d of the Civil Rights Law of the State of New York. The count alleged that Ms. Helander was without funds to bring the suit, that all legal expenses were being paid by the appellees, and that Ms. Helander would turn over to the Unification Church any judgment she receives. Appellants further alleged that the Helander suit is only one of approximately a dozen similar suits instituted in Unification Church members' names but maintained by the Church "as part of a general policy to destroy so–called 'deprogrammers', and others who had the courage to oppose the viewpoints of the Unification Church." The maintenance count claimed that these arrangements constitute champertous agreements. It also alleged that the appellees were maliciously intermeddling with the Helander suit not for the legitimate purposes outlined in the complaint in that case, but for the purpose of financially destroying appellants and discouraging them from "attempting to assert their constitutional rights."

---

**1.** *See generally* T. Patrick, *Let Our Children Go!* (1976); Note, *Deprogramming Religious Cultists*, 11 Loy.L.A.L.Rev. 807 (1978).

**2.** *Helander v. Patrick*, Civ. No. 77–2401 (S.D. N.Y., filed May 16, 1977).

This count was dismissed on the ground that New York does not recognize champerty as a legal wrong except as provided in a state penal statute, *see Lost Lots Associates, Ltd. v. Bruyn*, 68 A.D.2d 1006, 415 N.Y.S.2d 99 (1979). The district court held that the statute, set out in the margin,[3] is inapplicable here because, with respect to individuals, it applies only to persons engaged directly or indirectly in the business of collection and adjustment of claims, and because it prohibits only the purchase of a claim for the purpose of bringing an action on the claim. Appellees Salonen and Moon were not in the business of collecting claims, and neither they nor the Unification Church purchased or bargained for an assignment of the Helander claim, or any other claims, for the sole purpose of bringing an action. Additionally, the lower court said that the New York penal statute does not authorize a private cause of action for damages, *see Coopers & Lybrand v. Levitt*, 52 A.D.2d 493, 497, 384 N.Y.S.2d 804, 807 (1976).

The second count, under 42 U.S.C. § 1985(3), charged that appellees formed a conspiracy for the purpose of depriving appellants, by reason of their membership in a class of persons known as "religious counselors," "deprogrammers," or "rehabilitators," of the equal protection of the laws and of the privileges and immunities granted to them under the laws and Constitution of the United States. This count alleged "class based animus" and a malicious intent to deprive appellants of the rights of interstate travel, freedom of speech, free exercise of religion, and freedom of association, as well as the "right to pursue gainful employment." The means allegedly used

by appellees were the "maintenance of specious and groundless lawsuits and the use of force, threats of use of force and intimidation." Count Three, based on 42 U.S.C. § 1986, simply alleged that appellees Moon and Salonen had the power to aid in preventing the conspiracy alleged under Count Two but failed or refused to do so. These two federal civil rights claims obviously stand or fall together. They were dismissed on the ground that there was not, as required by *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), "racial, or perhaps otherwise class–based, invidiously discriminatory animus" behind the alleged conspirators' actions; "deprogrammers" are not cognizable as a class for purposes of Section 1985(3).

Count Four, incorporating all earlier allegations into a claim of intentional infliction of emotional distress, further alleged that "[b]y constant surveillance of the plaintiffs, by having agents patrol the home of plaintiffs, by maintaining in an unlawful manner lawsuits . . . with the sole purpose of ruining them financially and emotionally and by other equally outrageous activities which will be more fully developed through discovery," appellees have intentionally, knowingly, and maliciously inflicted "severe emotional distress and grievous mental suffering."

With respect to this count, on the motion to dismiss, the district court quite properly considered the allegations as true, despite the fact that they were lacking in detail and conclusory. The court went on to say that appellants were not entitled to relief, on the facts alleged, under the demanding standard of New York law, which permits

---

**3.** N.Y.Jud.Law § 489 (McKinney) provides in part:

No person or co–partnership, engaged directly or indirectly in the business of collection and adjustment of claims, and no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon;

. . .

Any corporation or association violating the provisions of this section shall be liable to a fine of not more than five thousand dollars; any person or co–partnership, violating the provisions of this section, and any officer, trustee, director, agent or employee of any person, co–partnership, corporation or association violating this section who, directly or indirectly, engages or assists in such violation, is guilty of a misdemeanor.

recovery for intentional infliction of emotional distress only in cases of "extreme outrage where the tortfeasor's conduct exceeds all bounds of decency usually tolerated by society and is calculated to and does cause mental distress of a serious nature." *Cohen v. Varig Airlines,* 62 A.D.2d 324, 335, 405 N.Y.S.2d 44, 50 (1978). The court concluded that the conduct alleged in the complaint "cannot be considered extremely outrageous," as required by *Fischer v. Maloney,* 43 N.Y.2d 553, 557–58, 373 N.E.2d 1215, 1217, 402 N,Y.S.2d 991, 992–93 (1978).

We believe that the dismissal of Count One was erroneous and that the dismissal of Count Four failed to take into account certain allegations made in that count. We also believe that the court should have permitted appellants to amend and allege, as Patrick's amended complaint had alleged, that the appellees had committed a prima facie tort.

Because the parties are citizens of different states, Counts One and Four, if they state claims for relief, may be maintained under diversity jurisdiction.

## DISCUSSION

We agree with the district court's conclusions as to the champerty claim made in Count One, although we believe that the court may have misconceived the issue as simply a question whether appellees' alleged conduct violated the New York penal statute [4] outlawing certain types of champerty,[5] and, if so, whether a private cause of action is available under the statute.[6] Count One liberally construed, however, may assert a claim for abuse of process.[7] As this court noted in *Weiss v. Hunna,* 312 F.2d 711, 716 (2d Cir.), *cert. denied,* 374 U.S. 853, 83 S.Ct. 1920, 10 L.Ed.2d 1073 (1963), the tort of abuse of process is recognized not only under the law of most American states but under the law of New York. *See, e. g., Board of Education v. Farmingdale Classroom Teachers Association,* 38 N.Y.2d 397, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975); *Hauser v. Bartow,* 273 N.Y. 370, 7 N.E.2d 268 (1937); *Rothbard v. Ringler,* 77 N.Y.S.2d 351 (Sup.Ct.1947). The gist of the tort " 'is not commencing an action or causing process to issue without justification, but misusing or misapplying process

**4.** See note 3 *supra.*

**5.** "Champerty" is a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds. It is one type of "maintenance," the more general term, which refers to maintaining, supporting, or promoting another person's litigation.

**6.** As we read *Lost Lots Associates, Ltd. v. Bruyn,* 68 A.D.2d 1006, 415 N.Y.S.2d 99 (1979), on which the court below relied, it held that champerty is a viable *defense* to another's claim only to the extent that it is outlawed by statute. Thus *Lost Lots* is not controlling on the issue whether a cause of action based on champerty exists at common law in New York. To be sure, the court in *Coopers & Lybrand v. Levitt,* 52 A.D.2d 493, 497, 384 N.Y.S.2d 804, 807 (1976), did assert with reference to a private cause of action that champerty does not exist except as provided by the New York criminal statute. But the authority of *Coopers & Lybrand* is undermined by that court's reliance on *Sedgwick v. Stanton,* 14 N.Y. 289, 294–95 (1856), and *Irwin v. Curie,* 171 N.Y. 409, 411, 64 N.E. 161, 161 (1902), cases which involved only the assertion of the crime of champerty as a defense to an action to enforce an agreement.

It appears, nonetheless, that there is no established New York tort encompassing maintenance and champerty. Although such a tort has made rare appearances in the decisional law of some jurisdictions, *see, e. g., Schnabel v. Taft Broadcasting Co.,* 525 S.W.2d 819 (Mo. App.1975); *Golden Commisary Corp. v. Shipley,* 157 A.2d 810 (D.C.Mun.Ct.App.1960), only a lone New York Supreme Court case, *Piranesi Imports Inc. v. Laverne,* 36 Misc.2d 1077, 233 N.Y.S.2d 659 (Sup.Ct.1962), suggests that such a tort *might* exist at common law in New York. As long ago as 1887, English legal scholar Frederick Pollock noted that actions for the wrong of maintenance "are in modern times rare though possible." F. Pollock, The Law of Torts 271 (1887). And the modern American treatises do not mention the tort at all.

**7.** Appellants have not stated a claim for malicious prosecution because that tort, New York law makes very clear, applies only when a proceeding has terminated in the plaintiff's favor, *see, e. g., Munoz v. City of New York,* 18 N.Y.2d 6, 10, 218 N.E.2d 527, 529, 271 N.Y.S.2d 645, 649 (1966); *Flaks, Zaslow & Co. v. Bank Computer Network Corp.,* 66 A.D.2d 363, 366, 413 N.Y.S.2d 1, 3 (1979); *Lincoln First Bank of Rochester v. Siegel,* 60 A.D.2d 270, 277, 400 N.Y.S.2d 627, 632 (1977).

justified in itself for an end other than that which it was designed to accomplish.'" *Weiss v. Hunna*, 312 F.2d at 717 (quoting W. Prosser, *Handbook of the Law of Torts* 667–68 (2d ed. 1955)). The New York courts appear to proceed on the reasonable assumption that a person is liable for abuse of process, as he would be liable for malicious prosecution, if he procures the initiation of a proceeding by a third party, *see Dishaw v. Wadleigh*, 15 A.D. 205, 44 N.Y.S. 207 (1897); *Board of Education v. Farmingdale Classroom Teachers Association*, 38 N.Y.2d at 402, 405, 343 N.E.2d at 282, 284, 380 N.Y.S.2d at 641, 644.

▰ As we construe Count One of appellants' complaint, it alleged that the primary purpose of the lawsuits brought by appellees is not the purpose for which they may properly be instituted, namely to obtain damages for the Church members. Instead, appellees allegedly seek to compel the appellants to cease their deprogramming activities by putting them to the trouble and expense of litigation. And appellants therefore requested an award of compensatory damages. It is not material, under the liberal rules of federal pleading, that Count One was mislabelled by appellants' counsel. *See* Fed.R.Civ.P. 8(f); *Conley v. Gibson*, 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–103, 2 L.Ed.2d 80 (1957); *Fort v. White*, 383 F.Supp. 949, 953 (D.Conn.1974), *aff'd in part, rev'd in part*, 530 F.2d 1113 (2d Cir. 1976); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1286 (1969). We hold that the allegations in Count One state a claim for abuse of process and that the lower court's dismissal of this count was improper.

▰ With respect to Counts Two and Three, the federal civil rights claims, we agree wholly with the court below. A class of deprogrammers, in our view, is not the kind of class contemplated by the Supreme Court's interpretation of Section 1985(3) [8] in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Though some courts have found discrimination against a religious group to be class–based animus for purposes of Section 1985(3), *see, e. g., Weiss v. Willow Tree Civic Association*, 467 F.Supp. 803, 812 (S.D.N.Y.1979); *Rankin v. Howard*, 457 F.Supp. 70, 74 (D.Ariz.1978); *Baer v. Baer*, 450 F.Supp. 481, 490–91 (N.D.Cal.1978), we do not believe that a group of individuals allegedly united by philosophical opposition to the Unification Church can be considered a class of person protected by the civil rights conspiracy statute. *See Rodgers v. Tolson*, 582 F.2d 315, 317 (4th Cir. 1978); *Church of Scientology v. Siegelman*, 475 F.Supp. 950, 957–58 (S.D.N.Y.1979).

▰ The Fourth Count is labelled one for intentional infliction of emotional distress. The court below felt that the bringing of lawsuits alleged in this complaint could not be considered "extremely outrageous" conduct, as required by New York law, *Fischer v. Maloney*, 43 N.Y.2d 553, 557–58, 373 N.E.2d 1215, 1217, 402 N.Y.S.2d 991, 992–93 (1978). The complaint, however, also contains allegations that the district court did not refer to and that relate to "constant surveillance of the plaintiffs" and "having agents patrol the home of plaintiffs" as well as to "other equally outrageous activities which will be more fully developed through discovery." New York decisions have upheld complaints alleging acts not dissimilar from the conduct alleged here. *See Halio v. Lurie*, 15 A.D.2d 62, 222 N.Y.S.2d 759 (1961) (sending taunting letters to young woman who had hoped to marry defendant and who had been deceived by him); *Flamm v. Van Nierop*, 56 Misc.2d 1059, 291 N.Y.S.2d 189 (Sup.Ct. 1968) (hounding of a plaintiff on the streets and in public places as well as making harassing telephone calls). It seems to us,

---

**8.** 42 U.S.C. § 1985(3) provides in part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, ... the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

therefore, that the allegations made here are sufficient to survive dismissal of the complaint.

To be sure, *Fischer v. Maloney*, as the court below correctly pointed out, questioned whether the "doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability, here malicious prosecution and abuse of process," 43 N.Y.2d at 558, 373 N.E.2d at 1217, 402 N.Y.S.2d at 993. Insofar as the Fourth Count reincorporates earlier allegations relating to conduct which constitutes abuse of process, as discussed above, the count is not sufficient to state a claim for intentional infliction of emotional distress. But the remaining allegations in Count Four, relating to constant surveillance and the like, are distinct and stand on their own.

We reverse and remand as to the dismissal of Counts One and Four, and direct that appellants be permitted to amend these counts and to allege in the alternative a prima facie tort, the intentional infliction of harm which does not fall into any established category of tort, *see Lincoln First Bank of Rochester v. Siegel*, 60 A.D.2d 270, 279–80, 400 N.Y.S.2d 627, 633 (1977); *Wegman v. Dairylea Cooperative, Inc.*, 50 A.D.2d 108, 114, 376 N.Y.S.2d 728, 735 (1975), *appeal dismissed*, 38 N.Y.2d 918, 346 N.E.2d 817, 382 N.Y.S.2d 979 (1976).

Needless to say, nothing stated in this opinion goes to the merits of this case or to any defense to appellants' suit, including insufficiency of service of process, although we trust that in accordance with his opinion Judge Cannella will give appellants an opportunity to make proper service where lacking. The parties are not precluded from applying for summary judgment or other such relief at the appropriate time.

Judgment reversed and cause remanded.