OPINION OF THE COURT
Gerard M. Weisberg, J.
In these proceedings, defendant has moved and claimant has cross-moved for summary judgment.
Claimant, the New York Blood Center, Inc. (Blood Center), is a New York not-for-profit corporation. Between 1972 and 1978, Blood Center operated the New York-New *391 Jersey Regional Transplant Program (Transplant Program) which was the co-ordinating agency for cadaveric donor kidney transplants in the New York metropolitan area. The procedures and policies of the Transplant Program were formulated by its advisory committee which was composed of representatives of participating hospitals.
Downstate Medical Center (Downstate), a health facility owned and operated by the State of New York, took part in the Transplant Program. A member of Downstate’s staff was on the advisory committee.
Initially, Blood Center, through the Transplant Program, was responsible for tissue typing, communicating with various hospitals about the availability of cadaveric kidneys and educating the public about the need for organ donors. As more kidney transplants were performed, Blood Center began to preserve kidneys at its facilities. It also became involved in the process of obtaining kidneys harvested within the region and delivering them either to a preservation site, a transplant hospital, i.e., the hospital where a transplant is performed, or both.
Various costs were incurred in connection with obtaining cadaveric kidneys. These included surgeons’ fees, tissue typing and organ preservation expenses. Blood Center states in its moving papers that it paid or incurred these charges and, in turn, billed them to the transplant hospital.
A fee schedule specifying the unit cost per kidney was formulated by the advisory committee. The first such schedule was effective on January 1, 1974. It was periodically updated.
Downstate did not sign a proposed agreement to the fee schedule that had been prepared by the advisory committee. However, on October 21, 1974, Downstate, through its then director, sent a letter to the Transplant Program agreeing to pay the per kidney fee for each organ received, provided such payment was reimbursed by Medicare and a formal contract was approved by the New York State Comptroller. The letter also expressed Downstate’s understanding that it was to be paid by Blood Center for services it had rendered.
*392 No formal contract was approved by the State Comptroller. Nevertheless, after some delay, payments to Blood Center were forthcoming from the State.
Early in 1978, Downstate informed Blood Center that it was disputing charges totaling $59,050, representing tissue typing charges which Downstate claimed it performed. These charges were to be offset against amounts Downstate owed Blood Center.
A letter, dated March 22,1978, was mailed from officials at Blood Center to Downstate’s director wherein it was requested that the $59,050 be acknowledged as a disputed amount. By a letter dated March 28, 1978, such acknowledgment was made by Downstate’s director.
In a letter to Downstate’s director, dated August 29, 1978, Blood Center’s comptroller expressed his organization’s position that it was “legally and morally entitled to payment in full” of the $59,050. Mention was made of a settlement offer which was withdrawn by Downstate because it had closed its accounts for the year. Finally, legal action was threatened if “a satisfactory response” was not forthcoming by September 14, 1978.
In addition to the foregoing amount, early in 1978 Blood Center issued invoices to Downstate totaling $34,800 for February of that year and $12,750 for March. In response to the February charges, a check for $20,850 was received by Blood Center on October 10, 1978. A second check for $8,800 was received on October 26, 1978 for the March billings. Thus, upon receipt of the second check, an unpaid balance of $17,900 was left on the February and March' invoices.
To recapitulate, as of the end of October, 1978, two amounts totaling $76,950 were allegedly due Blood Center from Downstate. These included the $59,050 offset and the $17,900 due on the invoices. In a letter dated April 30, 1979, request for payment of $76,950 was made to the New York State Department of Audit and Control. This action, seeking damages of $77,000 was commenced on October 12, 1979.
Defendant argues that the action is untimely. If such is the case, this court lacks jurisdiction to adjudicate the *393 claim. (Lurie v State of New York, 73 AD2d 1006, 1007, affd 52 NY2d 849; Matter of Welch v State of New York, 71 AD2d 494, 497-499; Kurtz v State of New York, 40 AD2d 917; Bommarito v State of New York, 35 AD2d 458.) A claim for breach of contract, express or implied, must be filed within six months after its accrual. (Court of Claims Act, § 10, subd 4.)
The expression “claim accrues” is not identical with the expression “cause of action accrues.” It has consistently been held that a claim accrues when damages accrue. (Bronxville Palmer v State of New York, 36 AD2d 647; Waterman v State of New York, 19 AD2d 264, affd 17 NY2d 613; Edlux Constr. Corp. v State of New York, 252 App Div 373, affd 277 NY 635; Glassman v Letchworth Vil. Developmental Center, 104 Misc 2d 755; cf. City of New York v State of New York, 40 NY2d 659, discussed infra.) Damages accrue when they are ascertainable. (Terry Contr. v State of New York, 27 AD2d 499; Fletcher-McCarthy Constr. Co. v State of New York, 53 Misc 2d 62; see, also, Shalman v Board of Educ., 31 AD2d 338.)
In considering defendant’s motion, we must construe the evidence before us in claimant’s favor. (Weiss v Garfield, 21 AD2d 156; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:17, p 437.) Solely for this purpose, therefore, we assume that either an express or implied contract existed between Blood Center and Downstate. This contract was breached, and the cause of action accrued when Downstate refused to pay the two amounts in controversy. (Forest-Fehlhaber v State of New York, 74 AD2d 272.)
In order to determine when the claim accrued, a separate analysis must be made of each of the disputed amounts. First, the $59,050 will be considered. In March of 1978, at least two letters with respect to that amount had been exchanged. Both state the controverted figure to be $59,050. This sum had not varied when the August 29, 1978 letter demanding payment was mailed. By that time, damages for the assumed breach had become fixed and ascertainable to claimant. Therefore, a claim to the extent of $59,050 accrued on August 29, 1978.
*394 Turning now to the $17,900 in dispute, when Downstate did not pay the entire amounts billed, there occurred a breach of any agreement upon which those charges were based. Damages were ascertainable simultaneous with such breach. Amounts tendered merely had to be subtracted from amounts invoiced. Therefore, claims of $13,950 and $3,950 accrued on October 10,1978 and October 26, 1978, respectively, when the checks in payment of the February and March invoices were received by Blood Center.
Since the total claim accrued more than six months prior to the filing, it is untimely and the granting of defendant’s motion for summary judgment is mandated. However, we deem it necessary to address several other issues raised.
Claimant relies on City of New York v State of New York (40 NY2d 659, supra) to support the proposition that a contract claim against the State does not accrue until the completion of an audit by the Comptroller. In that case, a dispute between the city and State arose over payment of interest by the State on certain condemnation awards. The Court of Appeals held that since the State Comptroller was required by statute to review the claims in question, the claim could not accrue until such review had been completed, because until that time, claimant did not possess a legal right to be paid that was enforceable in court. Specifically, the court stated that: “where, by contract or by statute, the State’s obligation to pay is conditioned upon an audit, no suit can be brought by a claimant until the official charged with making the audit has done so and has formally rejected all or some part of the claim.” (City of New York v State of New York, supra, p 668.)
In the instant case, claimant does not indicate any specific audit requirement whereby it was precluded from possessing or prevented from enforcing any alleged right to payment from Downstate. Contrary to claimant’s urging, the State Comptroller’s constitutional duty to audit all vouchers does not bear, in and of itself, upon the accrual of a claim. (NY Const, art V, § 1.) It is only where statutory or contractual language requiring an audit creates a precondition to the right to payment that a claim’s accrual *395 will be delayed until the audit becomes final. (City of New York v State of New York, supra, p 668.)
Similarly, claimant’s reliance on Edlux Constr. Corp. v State of New York (supra) is misplaced. That case construed former section 12 of the Court of Claims Act which then, in part, read: “But the court has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination except where the claim is founded upon express contract and such claim, or some part thereof, has been rejected by such tribunal or officer.” Based upon this language, the court in Edlux held that an accrual must abide audit and rejection by the Comptroller. However, since 1939 this statutory limitation has not been part of the Court of Claims Act. (Court of Claims Act, § 9; L 1939, ch 860.) Therefore, Edlux does not support the claimant’s position in this regard.
It is alleged that Downstate’s director suggested that Blood Center seek payment from the State Comptroller. Such advice is irrelevant to the accrual of damages where, as here, the ripening of the claim did not depend on an audit by the Comptroller. Any informal statement by the director cannot in these circumstances serve as a waiver of this court’s jurisdictional requirements under the Court of Claims Act. (See Glassman v Letchworth Vil. Developmental Center, supra, p 759.)
In its brief, claimant argues that in addition to a contract cause of action, a tort claim sounding either in conversion or prima facie tort lies against Downstate. Mention of these torts or reference to their elements is totally lacking from Blood Center’s claim. Nor can these elements be reasonably inferred from it. The claim is therefore facially insufficient to serve as the basis for a cause of action in tort. (Court of Claims Act, § 11; De Hart v State of New York, 92 Misc 2d 631; see, also, Patterson v State of New York, 54 AD2d 147; Matter of Karras v State of New York, 48 AD 2d 748, mot for lv to app den 37 NY2d 708; Chergotis v State of New York, 259 App Div 369.)
Even assuming a tortious cause of action had been pleaded, the gravamen of the claim would remain contractual. A tort may indeed accompany a breach of contract, *396 but only where the contract creates a relation out of which arises a duty independent of the contractual obligation and that duty is also violated. (Luxonomy Cars v Citibank, 65 AD2d 549, 550.)
By implication, claimant argues that by its “conversion” of the kidneys, Downstate, through its unauthorized exercise of dominion or control over “property” which it did not own, interfered with and was in defiance of claimant’s superior right to the “property”. (Meese v Miller, 79 AD2d 237, 242.) However, claimant does not allege any property right in the transferred kidneys, nor does it allege any intentional interference with such right by Downstate. (See Prosser, Law of Torts [4th ed], p 83.) Rather, it is clear from Blood Center’s moving papers that the claim is for payment of disputed charges for tissue typing and other services rendered. Any agreement between the parties was for services and no duty affecting property rights can be said to arise from that agreement. (Cf. Perlmutter v Beth David Hosp., 308 NY 100.) Therefore, a cause of action for conversion will not lie.
Nor can it be said that a prima facie tort, in addition to a contractual breach occurred since no alleged harm other than the failure to pay for services was inflicted by Downstate. (See Luxonomy Cars v Citibank, supra; Lincoln First Bank of Rochester v Siegel, 60 AD2d 270.)
In view of the fact that the claim is dismissed on jurisdictional grounds, the issue of compliance with the requirements of subdivision 2 of section 112 of the State Finance Law will not be considered at this time. Nor do we pass upon whether relief is available to claimant under subdivision 6 of section 10 of the Court of Claims Act, which must be sought by formal application addressing the factors specified in that statute.