Richard CONNIFF, Plaintiff,

v.

DODD, MEAD & CO., Thomas Nelson
Co. and Samuel Moore, Defendants.

No. 83 Civ. 9064 (GLG).

United States District Court,
S.D. New York.

Aug. 30, 1984.

Steel & Bellman, P.C., New York City, for plaintiff; Richard F. Bellman, New York City, of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendants Thomas Nelson Co. and Sam Moore; John Logan O'Donnell, Erica B. Baird, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

### INTRODUCTION

Richard Conniff compiled a book of verse, poetry, limericks, and epigrams entitled *The Devil's Book of Verse*. His publisher, Dodd, Mead & Co. ("Dodd, Mead"),[1] informed him that portions of the book were considered blasphemous by Thomas Nelson, Inc. ("Thomas Nelson"), the parent of Dodd, Mead, and Sam Moore, the president of Thomas Nelson. Therefore, unless these portions were removed, Dodd, Mead would have to discontinue promotion, distribution, and sales of the book by the direction of Thomas Nelson and Moore.

Conniff refused to remove the objectionable portions. Dodd, Mead, therefore, ceased promotion, distribution, and sales of the book. Moore explained to the press that he ordered Dodd, Mead to take these actions against Conniff because he did not want his companies to publish trash.

In response to the above, Conniff has sued Thomas Nelson and Moore for causing Dodd, Mead to breach its contract with Conniff and for defaming him.[2] Presently before the Court are motions by the de-

---

1. Conniff entered into an agreement with Everest House whereby he assigned to Everest House the exclusive right to print, publish, and sell *The Devil's Book of Verse*. Subsequent to this agreement, Dodd, Mead purchased Everest House and assumed the rights and obligations of the contract.

2. Conniff had also sued Dodd, Mead for breach of the contract. He later, however, voluntarily dismissed his contract claims against Dodd, Mead. (Apparently, these claims are referable to arbitration pursuant to the arbitration provision in the contract.)

fendants to dismiss the complaint. Moore moves, pursuant to Fed.R.Civ.P. 12(b)(2), to dismiss the complaint as to him for lack of personal jurisdiction. Thomas Nelson and Moore both move, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the complaint for failure to state a claim upon which relief can be granted.[3] The defendants' motions are granted in part and denied in part.

DISCUSSION

A. *Motion to Dismiss for Lack of Personal Jurisdiction*

Moore moves to dismiss the complaint as to him for lack of personal jurisdiction on the grounds that (a) he does not individually do business in New York within the meaning of N.Y.Civ.Prac.Law & R. § 301 (McKinney 1972) and (b) he is not subject to jurisdiction under New York's long arm statute, N.Y.Civ.Prac.Law & R. § 302 (McKinney 1972 & Supp.1984) ("CPLR 302"), because all of his alleged acts took place in his corporate, not personal, capacity. Conniff argues that Moore is subject to jurisdiction under CPLR 302 and that the fiduciary shield doctrine is not, and should not be, applicable to Moore in this situation. For the following reasons, the Court agrees with Moore.

■ Under the fiduciary shield doctrine, a person is free from the exercise of jurisdiction over him personally when his only contact with the state was by virtue of acts carried out by him as a fiduciary of a corporation. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir.1981). However, the fiduciary shield doctrine is not available when the corporate officer is acting in his own best interests rather than the corporation's interests. *Id.* at 903. The following is considered to determine if this is the situation:

It is appropriate to focus not only on the fealty of the employee to the corporation in the performance of those acts, but also on the nature of the corporation and the individual's relationship to it. If the corporation is a mere shell for its owner, the employee-owner's actions may be viewed as having been taken simply in his own interest.

*Id.* at 903.

Conniff contends that the tortious conduct complained of in this controversy calls for denial of the benefits of the shield doctrine. He argues that Moore's actions demonstrate that the corporate officer acted in his own personal interest rather than in the best interest of the corporation and, therefore, Moore is not shielded. Conniff further argues that Moore should not be shielded because he is the president of Thomas Nelson. Conniff, however, has not demonstrated that Moore's actions were not in the best interest of Thomas Nelson or that Thomas Nelson was a mere shell for Moore.[4]

■ The mere charge of tortious conduct against a corporate officer acting in his official capacity, without more, cannot support the assertion of personal jurisdiction over him. Therefore, Moore's motion to dismiss the complaint as against him is granted.

B. *Motion to Dismiss for Failure to State a Claim*

The amended complaint sets forth four causes of action against Thomas Nelson and Moore: (1) tortious interference with contractual relations; (2) intentional infliction of emotional distress; (3) prima facie tort; and (4) defamation. The defendants move to dismiss each of these causes of action for failure to state a claim upon

---

**3.** Since we are considering a motion to dismiss for failure to state a claim, the allegations in the amended complaint are construed favorably to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and assumed to be true, *Iroquois Industries, Inc. v. Syracuse China Corp.*, 417 F.2d 963, 965 (2d Cir.1969), *cert. denied*, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970).

**4.** The burden is on the plaintiff to come forward with facts which, if proven, establish jurisdiction over Moore under CPLR 301 or 302. *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir.1975); *Lamarr v. Klein*, 35 A.D.2d 248, 315 N.Y.S.2d 695, 697 (1st Dep't 1970), *aff'd*, 30 N.Y.2d 757, 284 N.E.2d 576, 333 N.Y.S.2d 421 (1972).

which relief can be granted. The Court grants the motion in part and denies it in part.

### 1. *Tortious Interference With Contractual Relations*

■ The elements of a claim of tortious interference with contractual relations are: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of a breach of the contract by the third party; and (4) damages caused by the breach. *Martin Ice Cream Co. v. Chipwich, Inc.*, 554 F.Supp. 933, 945 (S.D.N.Y. 1983). The plaintiff must "recite in nonconclusory language facts establishing all the elements of a wrongful and intentional interference with his contractual rights." *Benton v. Kennedy-Van Saun Mfg. & Eng. Corp.*, 2 A.D.2d 27, 152 N.Y.S.2d 955, 959 (1st Dep't 1956). Conniff has done this. The defendants contend, however, that they could tortiously interfere in the contracts of Dodd, Mead because Thomas Nelson is the parent company of Dodd, Mead.

■ A parent company has the privilege of interfering with the contract between its subsidiary and the plaintiff if the parent company does not use illegal means or is not motivated by malice toward the plaintiff. *Felsen v. Sol Cafe Mfg. Corp.*, 24 N.Y.2d 682, 687, 249 N.E.2d 452, 301 N.Y.S.2d 610, 613 (1969). The defendants argue that the plaintiff's claim is insufficient because a directive issued from a parent company to a subsidiary is not illegal and because no facts are alleged in support of the conclusory allegations that the defendants acted with malice. The Court cannot agree. First, although a directive may be an appropriate means for a parent company to deal with its subsidiary, the reason for, and the content and result of, the directive may not be legal.

■ Second, the plaintiff *has* alleged malice. This claim presents a factual issue to be determined at trial, at which time the plaintiff will have to prove malice in order

to succeed. *Muller v. Star Supermarkets, Inc.*, 49 A.D.2d 696, 370 N.Y.S.2d 768, 770 (4th Dep't 1975). For these reasons, the Court denies the motion to dismiss the first cause of action.

### 2. *Intentional Infliction of Emotional Distress*

■ The elements of a claim for intentional infliction of emotional distress are: (1) an extreme and outrageous act by the defendant; (2) an intent to cause severe emotional distress; (3) resulting severe emotional distress; (4) caused by the defendant's conduct. *Burba v. Rochester Gas and Electric Corp.*, 90 A.D.2d 984, 456 N.Y.S.2d 578, 579 (4th Dep't 1982). The defendants argue that the plaintiff's claim must fail because the plaintiff has not pleaded the first element. The defendants contend that the conduct of issuing a directive to Thomas Nelson's subsidiary to discontinue promotion, distribution, and sales of the plaintiff's book is not "extreme and outrageous" conduct. The Court cannot agree with the defendants for the following reasons.

"Liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Restatement (Second) of Torts* § 46 comment d (1965). *See also Fischer v. Maloney*, 43 N.Y.2d 553, 557, 373 N.E.2d 1215, 1217, 402 N.Y.S.2d 991, 992–93 (1978) (citing with approval *Restatement (Second) of Torts*).

■ Although some courts have found that certain conduct did not rise to the requisite level of extreme and outrageous conduct, *see, e.g., Church of Scientology of California v. Siegelman*, 94 F.R.D. 735, 741 (S.D.N.Y.1982) (threatening to commence a lawsuit and attempting to review a manuscript); *Fischer v. Maloney, supra*, 43 N.Y.2d at 557, 373 N.E.2d at 1217, 402

N.Y.S.2d at 993 (commencing a defamation suit); *Burba v. Rochester Gas and Electric Corp., supra,* 90 A.D.2d 984, 456 N.Y.S.2d at 579 (publishing a company memorandum prohibiting the employment of the plaintiffs on the defendant's property), we cannot say at this time that the conduct of the defendants here did not rise to that level. The statement to the press went beyond what was necessary to accomplish the intra-corporate objective. "It will be for the trier of the facts to determine ... whether the conduct of the defendant was such that it may be said that it went beyond all reasonable bounds of decency." *Halio v. Lurie,* 15 A.D.2d 62, 222 N.Y.S.2d 759, 764 (2d Dep't 1961). Therefore, the motion to dismiss the second cause of action must be denied.

### 3. *Prima Facie Tort*

The elements of a prima facie tort claim are: (1) the infliction of intentional harm; (2) resulting in damage; (3) without excuse or justification; (4) by an act or series of acts which would otherwise be lawful. *Lincoln First Bank of Rochester v. Siegel,* 60 A.D.2d 270, 400 N.Y.S.2d 627, 633 (4th Dep't 1977). In addition, there must be an allegation of special damages. *Id.* The defendants argue that the plaintiff has not pleaded special damages. The Court agrees with the defendants for the following reasons.

Special damages must be "fully and accurately stated" and alleged "with sufficient particularity to identify actual losses." *Lincoln First Bank of Rochester v. Siegel, supra,* 60 A.D.2d 270, 400 N.Y.S.2d at 633. This the plaintiff has not done. He has asked for a lump sum payment of $500,000 for the various harms that he has suffered. For this reason, the motion to dismiss the third cause of action is granted. *See Leather Development Corp. v. Dun & Bradstreet, Inc.,* 12 N.Y.2d 909, 188 N.E.2d 270, 237 N.Y.S.2d 1007 (1963) (dismissing the complaint for failure to allege and itemize special damages).

### 4. *Defamation*

The defendants move to dismiss the defamation claim on three grounds, namely that: (1) Moore's statement that he did not want his companies to publish trash is not capable of a defamatory meaning; (2) the statement is protected under the First Amendment and fair comment privilege; and (3) Conniff is a public figure with respect to the book and controversy, and thus he must show that the defendants acted with actual malice. For the following reasons, the Court denies the motion to dismiss this claim.

#### a. *Defamatory Meaning*

Defamatory meaning will be found in words that "tend to expose one to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation or disgrace, or to induce an evil opinion of one in the minds of right-thinking persons, and to deprive one of their confidence and friendly intercourse in society." *Fairley v. Peekskill Star Corp.,* 83 A.D.2d 294, 445 N.Y.S.2d 156, 158 (2d Dep't 1981). It is for the court to decide whether the words are susceptible of a defamatory meaning. *James v. Gannett Co.,* 40 N.Y.2d 415, 419, 353 N.E.2d 834, 386 N.Y.S.2d 871, 874 (1976). If the court decides that there is a reasonable basis for drawing a defamatory conclusion, then it becomes the function of the jury to decide whether the ordinary and average person would so understand the words. *Id.*

The statement that Thomas Nelson did not want to publish trash, thus implying that Conniff's book is trash, may be susceptible of a defamatory meaning. However, since the issue arises solely on the pleadings, the Court cannot decide that the statement is not defamatory until all the facts and circumstances are presented. *See James v. Gannett Co., supra,* 40 N.Y.2d at 420, 253 N.E.2d 834, 386 N.Y.S.2d at 874 (to determine if a statement is defamatory, it must be read against the background of its issuance with respect to the circumstances of its publication).

### b. *Opinions and Fair Comment*

██ The argument that the statement is an opinion and, thus, protected by the First Amendment is an interesting and close question. However, without the issue fully briefed and the record fully developed, the Court is not convinced that the statement is a protectable opinion and thus cannot decide this issue in the defendants' favor.

██ With respect to the defendants' argument that the statement is protected by the privilege of fair comment, the Court feels that this defense is not applicable here. The case cited by the defendants in support of their argument, *Guitar v. Westinghouse Electric Corp.*, 396 F.Supp. 1042 (S.D.N.Y.1975), *aff'd*, 538 F.2d 307 (2d Cir. 1976), involved a writer suing a critic for his alleged defamatory review of the writer's book. In the instant case, we do not have a critic commenting and evaluating a writer's book. Instead, we have a publisher who refuses to publish a writer's book by implying that it is trash. The two situations are not similar. Thus, the fair comment defense of *Guitar*, is not available to the defendants.

### c. *Public Figure and Malice*

Although the Court has some doubt as to whether Conniff is a public figure, assuming that he is such a person, Conniff has pled that the defendants acted with malice. Whether he can prove this is to be left for another time. Therefore, the Court finds this part of the defendants' argument unpersuasive.

CONCLUSION

In conclusion, the defendants' motions are granted in part and denied in part. Moore's motion to dismiss the complaint against him is granted. Thomas Nelson's motion to dismiss the four causes of action is granted insofar as dismissing the third cause of action.

SO ORDERED.