**SOLARGEN ELECTRIC MOTOR CAR CORP., and Solargen Electronics, Ltd., Plaintiffs,**

v.

**AMERICAN MOTORS CORPORATION, American Motors Sales Corporation, and General Motors Corporation, Defendants.**

No. 80 Civ. 3809 (RLC).

United States District Court, S. D. New York.

Sept. 15, 1981.

Steven J. Romer, New York City, for plaintiffs; Steven J. Romer, Evelyn F. Cohen, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendants American Motors Corp. and American Motors Sales Corp.; Robert J. Katz, William P. Stimson, New York City, of counsel.

John J. Higgins, New York City, for defendant General Motors Corp.; Robert C. Weinbaum, Geoffrey S. Walker, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

■ Plaintiffs in this antitrust action are two small interrelated companies specializing in the production of electric motor vehicles and their components. Plaintiffs, hereafter referred to as "Solargen," have brought suit against American Motors Corporation and American Motors Sales Corporation ("the American Motors defendants," "American Motors") for breach of contract and for violation of the Sherman Act, 15 U.S.C. § 1 et seq. The American Motors defendants have moved pursuant to Rule 56, F.R.Civ.P., for partial summary judgment dismissing counts one through eight of the complaint,[1] these stemming from an abortive transaction in which Solargen attempted to purchase 3,000 motorless Concord vehicles ("Concord gliders") at a price of approximately $3,000 per vehicle. Solargen alleges that the American Motors defendants reneged on a binding agreement to sell at that price, raised the price unjusti-

---

1. Count nine is not asserted against American Motors. Counts ten through thirteen pertain to a circumscribed issue closely related to American Motors' counterclaims. They are not addressed by this motion, but rather will be responded to in conjunction with American Motors' counterclaims against Solargen.

American Motors has moved in the alternative to dismiss the complaint pursuant to Rule 11,

F.R.Civ.P. Dismissal in accordance with Rule 11, F.R.Civ.P., must be predicated on a finding of plaintiff's (and its attorney's) subjective bad faith in bringing the action. *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir. 1980). In view of our disposition of American Motors' Rule 56 motion, we need not reach the issue of whether Solargen's action was brought in bad faith.

fiably to $4,593 per vehicle, and then following Solargen's acceptance of the higher price, delayed delivery of the vehicles unnecessarily. Solargen further alleges that the price increase and the delays were the result of pressure from defendant General Motors Corporation ("General Motors," "GM"), and that by acting in this manner for the purpose of sabotaging Solargen's prospects of commercial success, American Motors were engaging in a conspiracy with GM in violation of the Sherman Act. American Motors denies that it had any contact with General Motors regarding the Solargen transactions, that it had ever agreed to sell Concord gliders for any price less than $4,593, or even provided any basis for Solargen reasonably to rely upon a lower figure, or that it had ever caused any intentional or unnecessary delays in the delivery of Concord vehicles.

Solargen has brought suit against General Motors for a plethora of alleged abuses, including, *inter alia*, activities of commercial espionage carried on by GM consultant Robert Keyes against Solargen, bribery of Stanley Caulder (a scientist), Herbert Weisbaum (a TV reporter) and Dean Walters (a TV cameraman) for the purpose of disseminating unfavorable publicity about Solargen, intimidation of Solargen's potential suppliers, General Electric and American Motors among them, and deliberately making false claims to the public about GM's expected progress in producing electric vehicles. These allegations are presented under the legal rubric of conspiracy and monopoly claims within the meaning of Sections 1 and 2 of the Sherman Act, as well as the common law torts of intentionally destroying a business, inducing breach of contract, and the prima facie tort of "unethical conduct." General Motors has moved pursuant to Rule 56, F.R.Civ.P., for summary judgment dismissing all claims against it.[2]

Both the American Motors' motion for partial summary judgment and the General Motors' motion for summary judgment are granted. The breach of contract claims against American Motors are dismissed because careful review of the documents submitted to the court shows that there was never a contract for sale of Concord gliders at a price of $3,000 apiece, that Solargen had no reasonable basis on which to rely upon any price lower than $4,593, and that delays in the delivery of the gliders were not the fault of American Motors. The conspiracy claims against American Motors are dismissed for the same reason that all claims against General Motors are dismissed—notwithstanding the completion of substantial discovery by Solargen, there is no evidence in support of the claims and there is substantial evidence to the contrary.

◼ The breach of contract claim against American Motors stems from their refusal to deliver Concord gliders at a price of $3,000 each. American Motors and Solargen, represented by its attorney Stephen J. Romer, began negotiations over the sale of Concord gliders during the summer of 1979. Solargen has submitted affidavits stating that Romer came to believe that a binding contract for the sale of 3,000 gliders at $3,000 apiece existed as of the end of July, 1979, and that other Solargen employees relied upon Romer's belief in making plans for the production of Solargen electric vehicles.

There is, however, no evidence that Romer's reliance on the $3,000 price was at all reasonable, or that American Motors ever made or accepted an offer at that price. Documents submitted to the court show that American Motors explicitly left open the price even in its July 31 draft of the proposed agreement with Solargen. No price quotation was delivered by American Motors until the figure of $4,593 per vehicle was approved by its senior management and mailed to Solargen on September 5. Indeed, no price quotation could have been delivered earlier because it was only in late August that Solargen finalized its choice of

---

2. General Motors has also filed a Rule 11 motion, F.R.Civ.P., for dismissal of all claims against it. We decline to address this motion for reasons similar to those expressed in footnote 1, *supra*.

standard and optional equipment to be included in the gliders.

Throughout the summer Romer's negotiations were conducted principally with Robert J. Swaim, Manager of American Motors' Engine and Component Sales Department ("E & CS"), and William M. Bain, E & CS' regional sales manager for the Eastern United States. Bain and Swaim both attest that they never even suggested that the gliders might be available at a price of $3,000. Rather, they remained silent as to price, stating only that it would have to be determined later. Both the July 31 proposed agreement and repeated statements of Bain and Swaim explicitly informed Romer that any negotiated arrangement would have to be approved by American Motors' top senior management before it could become operative. Accordingly even if Bain or Swaim had reinforced Romer's mistaken belief in a price of $3,000, Romer should have known that he could not rely upon their statements to bind American Motors.

Solargen's assertion of unreasonable delays by American Motors in delivering Concord gliders is clearly without merit. The only substantial delay came in November when Solargen itself sought to defer future shipments for the months of December and January, and refused to accept delivery of 83 gliders that had been shipped. While American Motors' decision to crash test Solargen vehicles may have caused a few days' delay, the purpose of such tests was to insure that the vehicles were in compliance with federal safety standards. Moreover, Romer had been informed in June that such tests would be necessary unless Solargen obtained a waiver of the official safety requirements. No waiver was obtained, hence American Motors was entirely correct in requiring the tests. Needless to say, when a party's conduct is totally above reproach, it cannot form the basis of an action against the party in either contract or antitrust.

Solargen's allegations of a conspiracy spearheaded by General Motors are without support. As to the claim of conspiracy, all American Motors' personnel who played a significant role in the Solargen transactions categorically deny having had any contact whatever with General Motors or its representatives. Similarly, General Motors' management deny all involvement in the Solargen-American Motors business dealings. Solargen's only evidence in support of this alleged conspiracy consists of two things: the fact that General Motors supplies American Motors with many auto parts and therefore would have had the capacity to coerce American Motors economically, and the fact that when Romer expressed his suspicions of a GM-based conspiracy to Bain and Swaim they did not emphatically deny the possibility. Neither fact provides Romer with any "affirmative indication that his version of the facts is not fanciful." *Quinn v. Syracuse Model Neighborhood*, 613 F.2d 438, 445 (2d Cir. 1980). Although Rule 56 requires that established facts be viewed in the light most favorable to the nonmoving party, the rule is not intended "to preserve purely speculative issues of fact for trial." *Watson v. Southern Railway Co.*, 420 F.Supp. 483, 485 (D.S.C. 1975), *aff'd without opinion*, 542 F.2d 1170 (4th Cir. 1976).

Plaintiffs' other allegations against General Motors fare no better when the voluminous depositions and affidavits are examined for factual support. Romer's assertion that Weisbaum, Walters and Calder were all bribed by General Motors rests on bare suspicion and nothing more. All three deny unequivocally having received a valuable consideration from General Motors or having discussed their evaluation of Solargen's product with General Motors.

The allegation that GM consultant Robert Keyes was a commercial spy who illicitly gathered confidential trade secrets is asserted with relish, but Solargen is unable to specify even a single instance of illegal conduct by Keyes, whose greatest act of espionage appears to have been meetings with the Romer brothers wherein he obtained publicly available information about Solargen. Plaintiffs' suspicions are fueled primarily by a document in which a GM em-

ployee referred to Keyes's apparent relief that his name had not come up in a certain meeting. While this may titillate those prone to suspicion, it does not by itself justify going to trial on allegations of commercial espionage. Also without support are Solargen's claims that GM coerced suppliers to cease doing business with Solargen.

Plaintiffs in this case have made a number of wild accusations, all of them unsupported. Defendants' task in gathering evidence against all the accusations has been substantial. It is with some temerity that Romer argues: "It is inconceivable that no material issues of fact can be found in the twenty-five pounds of paper submitted by GM in support of its summary judgment motion." (Solargen memorandum in opposition to General Motors Motion at 25)

The Supreme Court has stated that litigants' rights to trial on their claims should not be extended "to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

■ While most [3] of Solargen's allegations against General Motors would be actionable if supported factually, they lack even a modicum of evidentiary support to justify the expense, *see Lupia v. Stella D'Oro Biscuit Co.*, 586 F.2d 1163, 1167 (7th Cir. 1978), *cert. denied*, 440 U.S. 982, 99 S.Ct. 1791, 60 L.Ed.2d 242 (1979), of going to trial. For this reason General Motors' motion for summary judgment is granted, and all claims against General Motors are dismissed, as are counts one through eight of the complaint against the American Motors defendants.

IT IS SO ORDERED.

**3.** Solargen's allegations that GM knowingly exaggerated the successes of its experimental battery program to the public do not constitute a valid cause of action that Solargen has standing to bring. In addition, these allegations, like the others in the complaint, are factually unsupported.