Michael CHILDERS, Plaintiff,

v.

HIGH SOCIETY MAGAZINE, INC., and Drake Publishers, Inc., Defendants.

No. 82 Civ. 1905 (KTD).

United States District Court,
S.D. New York.

Feb. 2, 1983.

---

Harold Wm. Suckenik, New York City, for plaintiff; Ben C. Friedman, New York City, of counsel.

Abelman, Frayne & Rezac, New York City, for defendants; Jeffrey A. Schwab, New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Michael Childers moves for summary judgment on the question of the liability of the defendants, Drake Publishers, Inc. ("Drake") and High Society Magazine, Inc. ("High Society"), and, in addition, for referral of the case to a Magistrate to hear and determine the amount of damages owing to the plaintiff. Alternatively, plaintiff moves to strike the defendants' Answer.

Defendants have cross-moved to dismiss the complaint.

Plaintiff's Complaint arises out of Drake's publication of High Society magazine on three occasions bearing copies of plaintiff's photographs on the cover.[1] Plaintiff asserts that this use by the defendants was unauthorized and an infringement on his valid copyright.[2] In support of his summary judgment motion, plaintiff has filed several sworn affidavits by witnesses and participants to the relevant transactions. In opposition, defendants' attorney has provided a somewhat confusing declaration. For the reasons that follow, plaintiff's motion for summary judgment is granted, and all other motions are denied.

## I.

## FACTS

Uncontroverted sworn affidavits provided by plaintiff establish the following facts: Sygma Photo News, Inc. ("Sygma") acts "as representative and agent for the sale of one-time, non-exclusive reproduction rights to the photographs of over 900 photographers." Hovde Affidavit ¶ 2. Plaintiff Michael Childers is one such photographer. Sygma has acted as plaintiff's exclusive agent for the distribution and sale of one-time reproduction rights to his photographs for over seven years. Childers' Affidavit ¶ 4; Laffont Affidavit ¶ 4; Hovde Affidavit ¶ 3. Plaintiff's photographs, as well as most photographs distributed by Sygma, are marketed by Sygma in the following manner, as described by Sygma's director and chief executive officer:

A potential customer telephones us, identifies himself, indicates the type of photographs needed and their intended use. SYGMA then makes a selection of images from our stock library based upon the customer's request. The customer ar-

ranges for the selection to be picked up and then reviews the selection. The customer then telephones SYGMA to advise if he is interested in any of the photographs, and if he is, we agree on a price based upon such factors as the nature of the specified use, the number and quality of the image or images desired and the reputation of the photographer. The customer then reproduces the desired image on its plates, and returns *all* the slides to SYGMA. SYGMA then confirms the transaction in an invoice which identifies the customer, the authorized use, the image, the photographer and the price. In most instances, the customer pays after receipt of the invoice.

Laffont Affidavit ¶ 3.

The customer's intended use influences Sygma's choice of selections from its stock library. For example, if a customer intends to use the photographs in "any publications which might be considered of questionable taste," Sygma will not provide any of the plaintiff's photographs in the selection. Laffont Affidavit ¶ 5; *see also* Hovde Affidavit ¶ 3. This understandable practice stems from the professional status of photographers such as Childers and his subjects' preferences: "Prominent screen actors and actresses ... have specifically requested that I photograph them or have agreed to pose for me because of their confidence in my personal taste, integrity and discretion—i.e. I would not sell their photographs to sleazy, exploitive or pornographic publications, such as ... 'High Society' ...." Childers' Affidavit ¶ 2; *see also id.* ¶¶ 7–9; Laffont Affidavit ¶ 5; Hovde Affidavit ¶ 3. In further support of this stated policy, both Sygma and the plaintiff note that they have on several occasions refused "out of hand" requests by "similar" magazines and newspapers for

---

1. A Childers' photograph of Valerie Perrine appeared on the cover of High Society's October 1980 issue; a Childers' photograph of Ali MacGraw appeared on High Society's December issue; and another Childers' photograph of Valerie Perrine appeared on the March 1981 cover of High Society magazine. Complaint Exhibits 7–9.

2. Plaintiff's Complaint also contains causes of action for fraud and conspiracy to violate the copyright laws. Plaintiff only moves for summary judgment on the copyright claim; therefore, these causes of action will not be discussed.

Childers' photographs. Childers' Affidavit ¶¶ 5 & 6; Laffont Affidavit ¶ 5.

In June 1980, Lawrence Hovde, a salesperson in Sygma's celebrity/glamour department, was contacted by telephone by a woman who introduced herself as Sue Stevens of Drake. Hovde Affidavit ¶ 4. Mr. Hovde described the conversation as follows:

> Ms. Stevens stated that she was interested in purchasing one-time reproduction rights of photographs of VALERIE PERRINE, ALI MACGRAW, JILL CLAYBURGH and some others for use as contributions in a series of paperback trade books to be entitled "Media Stars." Ms. Stevens described "Media Stars" as glamourous, inoffensive trade paperback books comprised of collections of photographs by various well-known photographers together with short biographies of popular television and motion picture stars.

*Id.* Hovde then questioned his co-workers concerning Drake's reputation. *Id.* ¶ 5. At the time, no one was aware that Drake was associated with the magazine High Society. In fact, until 1978 Drake apparently only published works unrelated to the genre in question. In 1978, Drake went into bankruptcy and sold several of its principal assets to another publishing company.[3] High Society at that time purchased Drake's stock and Drake filed a Certificate of Doing Business as High Society magazine with the New York County Clerk. Laffont stated that even had it known Drake published High Society, the photographs still could have been sold to Drake relying on the defendants' representation that the photographs were for use in an "inoffensive

trade paperback book" entitled "Media Stars," and not in High Society magazine. Laffont Affidavit ¶ 8. In any case, Sygma was not aware of either the connection between High Society and Drake or of the actual intended use of the photographs in question until after all three were sold to Drake. Laffont Affidavit ¶ 6; Hovde Affidavit ¶¶ 6, 13, 14 & 18.

In response to defendant Drake's request, Hovde prepared a selection of approximately twenty slides, including some photographs by the plaintiff. These were picked up by a Drake representative who identified herself as Carmen West. Within several days of this pick-up, Ms. Stevens telephoned Hovde to advise him that Drake was interested in purchasing one-time reproduction rights to a Childers' photograph of Valerie Perrine.[4] She stated that the photograph was to be used on the cover of a paperback book entitled "Media Stars of the 70's."[5] Hovde stated that the price for the described use would be $350.

Ms. West then returned all the slides to Sygma along with Drake's check dated June 20, 1980, for $350. Ms. West stated that Drake was preparing additional books in its Media Stars series, and would like to review additional slides in the Sygma library. Sygma thereafter mailed an invoice dated July 1, 1980, to Drake confirming the first transaction. *See* Hovde Affidavit, Hovde Exhibit 2. The invoice identified the photographer, the subject, and the photograph's intended use on the cover of "Media Stars of the 70's." *Id.*

In early September, after reviewing another selection of Sygma slides, Ms. Stevens telephoned Hovde to request the one-time

---

**3.** The company that purchased several Drake assets while it was in bankruptcy was Sterling Publishing Company, Inc. ("Sterling"). Plaintiff, relying on an incorrect Dun & Bradstreet report, originally had made Sterling an additional defendant, and labelled Drake a division of Sterling. Upon learning of his mistake, plaintiff voluntarily discontinued his action against Sterling.

**4.** This photograph of Valerie Perrine, as well as the other Perrine photograph discussed *infra,* were created in a photography session in late 1979. Childers' Affidavit ¶ 7. The plaintiff

states that "[i]t was expressly agreed between Valerie Perrine and myself that the photographs resulting from the session would be used only in reputable publications in a manner designed to compliment and further Ms. Perrine's reputation and career." *Id.*

**5.** Because this is a summary judgment motion it is important to note that these facts concerning representations by Drake employees is not controverted by any affidavits of the defendants.

rights to a Childers' photograph of Ali MacGraw for use in the Media Stars series.[6] The slide selection and a check dated September 15, 1980, for the agreed on amount of $350 were delivered to Sygma by Ms. West prior to billing. Sygma again, therefore, confirmed the transaction by invoice dated September 17, 1980. Hovde Affidavit, Hovde Exhibit 5. The latter invoice identified the Childrers' photograph of Ali MacGraw and its use in "Stars of the 80's." *Id.*

Less than a month later, Ms. West requested and received additional slides for use in "Media Stars 1981." Within a few days she notified Hovde that Drake wanted to use another Childers' photograph of Valerie Perrine in its "Media Stars of 1981."[7] She returned this last selection to Sygma, and several days later mailed Drake's payment in the amount of $350 enclosed in an envelope bearing the return address of High Society magazine, Inc.[8] The check was dated December 17, 1980. Hovde states that upon noticing the envelope's return address, he immediately attempted to reach either Ms. Stevens or Ms. West at Drake, but neither would receive or return his telephone calls.

In late December 1980, the plaintiff was contacted by Valerie Perrine and her public relations people. Childers' Affidavit ¶ 10. Upset, they stated that plaintiff's photograph of Ms. Perrine had appeared on the cover of the October 1980 issue of High Society magazine. Plaintiff became further "shocked and appalled" to learn that his photograph of Ms. MacGraw appeared on the December 1980 High Society maga-

zine cover. · *Id.* ¶ 11. He telephoned Ms. MacGraw to notify her of the regrettable and unauthorized use, and then in agitation he telephoned Sygma. *Id.* ¶ 12. Mr. Laffont assured the plaintiff that he knew of no authorization given to High Society, but said that he would look into the circumstances. Laffont thereupon reviewed all transactions involving Michael Childers' photographs, and spoke with Hovde. Laffont Affidavit ¶ 6; Hovde Affidavit ¶ 14. This review revealed that the only authorizations given for the photographs were to Drake for use in "Media Stars of the 70's," "Stars of the 80's," and "Media Stars 1981." Laffont Affidavit ¶ 6. Laffont vaguely remembered Drake as a relatively "respectable" book publisher. *Id.* This fact, coupled with the poor quality of the Ali MacGraw cover photograph, led Laffont and Hovde to believe initially that High Society had copied the photographs out of Drake's "Media Stars" books. *Id.;* Hovde Affidavit ¶ 14. Hovde again unsuccessfully attempted to reach either Ms. Stevens or Ms. West at Drake. *Id.* ¶ 15. The invoice confirming the third transaction was sent on January 27, 1981, to Drake. "Media Stars 1981" was the identified use of the Childers' photograph of Valerie Perrine. Hovde Affidavit, Hovde Exhibit 6. Sygma notified plaintiff that no authorization had ever been given to High Society magazine to use plaintiff's photographs. Childers' Affidavit ¶ 13. Sygma also stated that it was continuing in its attempts to reach Drake. *Id.* On March 4, 1981, plaintiff registered each of the three photographs in question as required by 17 U.S.C. § 411(a). *See* Complaint Exhibits 4–6. The complaint in the instant case was filed on March 26, 1982.

---

**6.** This photograph was created in early 1980 at Ms. MacGraw's request. Childers' Affidavit ¶ 8. Again, it was expressly agreed that the plaintiff would use the photograph in "reputable publications" designed to compliment and further Ms. MacGraw's reputation and career.

**7.** *See supra* note 5. Drake also purchased a photograph of Jill Clayburgh by Sereny. This photograph is not relevant to the instant case.

**8.** Defendants claim that plaintiff knew that High Society published the first two photographs before selling the third photograph in part because "Sygma also concedes that Drake

paid for at least one of the first two photographs by a check delivered to Sygma in an envelope identifying 'High Society magazine' but still sold Drake the third photograph for like usage." Attorney's Declaration in Opposition to Motion for Judgment and in Support of Cross Motion to Dismiss ¶ 35 (hereinafter "Declaration in Opposition"). Sygma did not concede that at all. Rather, Sygma stated that the envelope identifying High Society magazine enclosed the payment for the *third* photograph, not either of the first two photographs. Hovde Affidavit ¶ 12.

It is most important to recognize that the defendants do not deny any of these facts. No other explanation is ever offered. In the absence of any other explanation by defendants, I must conclude that these undisputed allegations are the facts.

## II.

## DISCUSSION

■ To establish a claim for copyright infringement the plaintiff must prove ownership of a valid copyright and copying by the defendants. *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 499 (2d Cir.1982). In the instant case the defendants unquestionably copied plaintiff's photographs. Defendants contend, however, that there are factual questions concerning both plaintiff's original claim to copyright ownership, and the extent to which any subsequent transfer of those rights may have occurred.[9] The defendants assert: (i) plaintiff does not have a valid copyright to the photographs in question; (ii) plaintiff has produced no written evidence of his ownership rights to the photographs vis-a-vis Ms. Perrine and Ms. MacGraw; (iii) plaintiff's relationship with Sygma is unclear; (iv) defendants were without notice of plaintiff's copyright, and (v) all rights to the photographs were transferred to Drake without restriction. I will deal with each of defendants' assertions *seriatim.*

■ In the summary judgment context, the movant bears the burden of showing that no genuine issues of material fact remain unresolved. *See, e.g., D.C. Comics, Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24 at 26 (2d Cir.1982); *American Int'l Group v. London American Int'l Corp. Ltd.*, 664 F.2d 348, 351 (2d Cir.1981). In the instant case the plaintiff has established *prima facie* evidence of a valid copyright by registering his copyright pursuant to 17 U.S.C. § 410(c). Section 410(c) provides that "the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." In effect, the statute establishes the validity of plaintiff's copyright for the purposes of summary judgment unless the defendants can put the factual underpinnings of the copyright in issue. *Cf. Samet & Wells, Inc. v. Shalom Toy Co., Inc.*, 429 F.Supp. 895, 902 (E.D.N.Y.1977), *aff'd* 578 F.2d 1369 (2d Cir.1978) (in the absence of contrary evidence, plaintiff's copyright ownership claim upheld).

A. Validity and Ownership of Copyrights in the Photographs

Defendants argue that factual ambiguities concerning the copyrights render summary judgment inappropriate. First, they assert that the copyright registration may be defective because it was issued for "unpublished" works; and second, they contend that a factual issue remains concerning whether the photographs were "works for hire" requiring a written transfer from subject to photographer. Careful examination of these two alleged factual questions reveals that the former is illusory, and the latter is a legal question ripe for resolution in a summary judgment motion.

■ The first ground asserted by defendants concerns the fact that plaintiff's Certificate of Registration filed in March 1981 characterizes the photographs as "unpublished." Yet each of these photographs, defendants note, were "published" in issues of High Society prior to March. Defendants argue that this raises factual questions concerning good faith and copyright validity. This argument, however, ignores the governing regulation. The United States Register of Copyrights provides in its instructions that works whose only publication was unauthorized are to be labelled "unpublished" on the registration certificate. Plaintiff's Reply Affidavit at 6–7. Thus, this speculation on defendants' part does not raise a "genuine issue of material fact." *See Exxon Corp. v. Federal Trade Commission*, 663 F.2d 120, 128 (D.C.Cir. 1980) ("It is not the intent of Rule 56 to

---

9. Defendants' cross-motion to dismiss the complaint, mostly on technical and frivolous pleading grounds does not merit discussion, and is accordingly denied.

preserve purely· speculative issues of fact for trial ...."); *Solargen Elec. Motor Car Corp. v. Am. Motors Corp.*, 530 F.Supp. 22, 25 (S.D.N.Y.1981).

■ Defendants' second argument relies on the following statutory language:

WORKS MADE FOR HIRE—In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

Copyright Act of 1976 § 101(b), 17 U.S.C. § 201(b) (1977). No written instrument expressly provided that plaintiff has the copyright to the relevant photographs. Thus, defendants claim, an issue of fact remains concerning whether this is a "work for hire."

A "work made for hire" is—

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, *if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.*

*Id.* § 101 (emphasis added). Defendants can not possibly assert that plaintiff is an "employee" of either Ms. Perrine or Ms. MacGraw; rather, they seem to claim plaintiff may fit into sub-paragraph (2) of the definition. In support of this argument,

defendants cite two cases decided before 1978. Defendants' Memorandum of Law at 3. The Copyright Act of 1976 changed the law with respect to ownership of rights to the copyright of works created by commission or order. *See* 1 Nimmer on Copyright, § 5.03(b)(2)(c), at 5–23 to 5–24 (1981). Thus, the language quoted above expressly provides that it is only "work for hire ... *if* the parties expressly agree in a written instrument ...." Hence the law plainly and directly contradicts the defendants' argument. Moreover, plaintiff has made it clear in his sworn affidavit, which is not contested, that his contract with his subjects provides for his sole ownership of the photographs.[10]

Therefore, no factual issues remain to prevent summary judgment on this issue. *See Exxon Corp. v. FTC, supra; Keller v. Dravo Corp.*, 441 F.2d 1239, 1244 (5th Cir. 1971), *cert. denied*, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972).

### B. Plaintiff's Relationship With Sygma

■ Defendants have not explained how this is a factual question warranting denial of plaintiff's motion for summary judgment.[11] I assume defendants are questioning the extent to which plaintiff may have transferred his copyright to Sygma, thereby removing his ability or standing to pursue this claim. Both Sygma and plaintiff, however, have stated without challenge by defendants that Sygma was plaintiff's exclusive distribution *agent.* Childers' Affidavit ¶ 4; Laffont Affidavit ¶ 4; Hovde Affidavit ¶ 3. Defendants' unsupported assertion that "it might not be so," in the face of sworn affidavits by all of the participants to the relationship does not defeat plaintiff's summary judgment application. *See* Rule 56(e); *Exxon Corp. v. FTC, supra; Keller v. Dravo Corp., supra.*

---

**10.** Fed.R.Civ.P. 56(e):

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

**11.** Defendants allege only that "[n]o writings have been produced as to the relationship between plaintiff and Sygma," Defendants' Statement Pursuant to Local Civil Rule 3(g) at ¶ 12; and that "[n]o writings have been produced as to the relationship between plaintiff and Sygma." Declaration in Opposition ¶ 18(c). No other explanation was made by the defendants.

### C. Notice

Defendants assert that plaintiff failed to afix proper copyright notice on the photographs which would bar plaintiff's claim for damages. *See* Declaration in Opposition ¶¶ 19–23. Plaintiff's motion for summary judgment, however, only concerns liability. The extent to which plaintiff may recover any damages is not relevant herein. I note, moreover, that plaintiff's reply affidavit, unless it is later contested as an inaccurate representation of the slides delivered to defendants, contains copyright notice that meets the specification of the Copyright Act. *See* 17 U.S.C. § 401(b) (1977).

### D. The Rights Transferred by Sygma to the Defendants

The defendants maintain that "the defendant Drake is entitled to prove its counterclaim that the writing with Sygma evidences a written transfer of all right to said photographs." Declaration in Opposition ¶ 24. Defendants agree that a copyrighted work can be sold with restrictions on its use, *id.* ¶¶ 30 & 31; however, they state that "[t]here is a significant factual dispute in this case as to what was the nature of the transfers from plaintiff to Sygma to Drake." *Id.* ¶ 29.[12]

Defendants' attempted sleight of hand again fails to obfuscate the fact that it has failed to put into question any issue of fact. The defendants have not proffered any evidence controverting the contractual terms of the transfers as set out in plaintiff's affidavits. First, contrary to what they assert in their motion papers, defendants' counterclaims do not mention the existence of a "writing" of any kind. Nor have defendants produced any writing. I must assume, therefore, that their motion papers refer to Sygma's confirming invoices because these are the only writings concern-

ing the transfers before me in this case. These invoices state explicitly that the first Childers' photograph of Valerie Perrine is for a "paperback book 'Media Stars of the 70's.'" Hovde Affidavit, Hovde Exhibit 2. The second invoice states that the Childers' photograph of Ali MacGraw is for "Stars of the 80's." *Id.* Exhibit 4. The third invoice provides that the Childers' photograph of Valerie Perrine is to be used in "Media Stars 1981." *Id.* Exhibit 6. Thus, the only writing that defendants can rely on states that the photographs were to be used in various paperback books, not High Society magazine. The defendants baldly assert that the transfer was not restrictive. The parties responding to the motion cannot rely solely on their pleadings in opposition to summary judgment. Fed.R.Civ.P. 56(e). Rather, they must come forward with some counter evidence. *See Marks v. U.S. Dept. of Justice,* 578 F.2d 261, 263 (9th Cir.1978) ("[c]onclusory allegations unsupported by factual data will not create a triable issue of fact."). Defendants have produced no affidavits or other evidence, however, by the participants such as Stevens or West to rebut the otherwise uncontroverted affidavits of the Sygma personnel.[13]

In sum, plaintiff has established by various sworn affidavits the defendants' liability for copyright infringement, and defendants have not come forward with any contrary evidence. Accordingly, plaintiff's motion for summary judgment on the question of liability is granted. This case is now referred to Magistrate Gershon for inquest to hear the damage calculation. All other motions are denied.

---

**12.** The transfer from plaintiff to Sygma was discussed *supra* section II B. Uncontroverted affidavits established that Sygma acted as plaintiff's agent in selling one-time reproduction rights. This section examines the transfer from plaintiff (by his agent Sygma) to Drake.

**13.** Defendants' attorney states that the transfer was not restrictive. He does not, however, state that he has personal knowledge of the contractual terms, nor does he support his conclusory allegations with any facts. *See Marks v. U.S. Dept. of Justice,* 578 F.2d 261, 263 (9th Cir.1978).