**SYGMA PHOTO NEWS, INC., Plaintiff and Defendant-on-Counterclaims,**

v.

**GLOBE INTERNATIONAL, INC., Defendant-Counterclaimant.**

No. 83 Civ. 2604.

United States District Court, S.D. New York.

April 15, 1985.

**1154**

Ben C. Friedman, New York City, for plaintiff and defendant-on-counterclaims.

Milgrim, Thomajan, Jacobs & Lee, New York City (Andrew L. Deutsch, New York City, of counsel), for defendant-counterclaimant.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiff Sygma Photo News, Inc. ("Sygma"), brought this action against defendant Globe International, Inc. ("Globe"), for alleged fraud and misrepresentation arising out of an agreement between the parties regarding the publication of photographs of certain members of Great Britain's Royal Family. Globe has asserted counterclaims against Sygma for abuse of process and prima facie tort. Several motions are now before the court. Sygma has moved to amend its complaint to assert claims of copyright infringement, to add two affiliated corporations as defendants, to dismiss Globe's counterclaims, and for summary judgment. Globe opposes these motions and has cross-moved for summary judgment on various grounds.

### Background

On December 24, 1982, Timothy Graham, a free-lance photographer, was contacted by the press secretary to the Prince of Wales and invited to shoot exclusive photographs of Prince Charles, Princess Diana, and their infant son, Prince William (the "Prince William photographs"). Graham accepted the invitation, selected certain rooms at Kensington Palace for the photography session, and on February 1, 1983, took about 200 photographs. From those, he selected the best and submitted them for review by Buckingham Palace. According to Graham, it was understood that "as a matter of courtesy" he would not distribute any photographs to which the Royal Family objected. Graham also had an unwritten "gentleman's agreement" with Buckingham Palace regarding distribution and the publishing date of the Prince William photographs. In the United States,

the photographs were not to be published before March 15, 1983 (the "embargo date").

Sygma, a New York corporation, is a news agency which distributes and sells reproduction rights in photographs to newspapers and magazines, such as the Globe, a weekly tabloid that is published by defendant and distributed throughout the United States and Canada. Pursuant to an exclusive agency agreement with Graham, Sygma obtained sixteen slides of the Prince William photographs for distribution to all newspapers, magazines, and television stations that requested them. On March 2, 1983, Sygma provided the slides to Globe with a written statement from Sygma's general manager:

> I, Elaine Laffont, as General Manager of Sygma New York undertake to ensure that all clients receiving from Sygma the official photographs of the Prince and Princess of Wales and Prince William will comply with the Strict Embargo that forbids publication or use of these photographs until the morning of TUESDAY, MARCH 15TH, 1983 (i.e. *magazines/newspapers featuring the pictures must not be on sale before March 15 or have cover dates of earlier than March 15th*). In the case of TV it is noted that the photographs must not be televised until March 15th.
>
> I guarantee to ensure that all prints and sets of color transparencies issued by Sygma in syndicating these photographs will be marked clearly with the embargo date as set by Buckingham Palace.
>
> Any legal action necessary to sue for damages will be undertaken by Sygma against any publisher breaking the embargo—and any sums donated to charity.

The statement was signed by Laffont and by Kas Wilson, Globe's New York photo editor. Wilson also assured Laffont in a letter dated March 2, 1983: "We agree not to break the embargo on Tim Graham's Royal Family pictures.... They will be published in the March 22, 1983 issue of the GLOBE, which goes on newsstands for sale on Tuesday, March 15, 1983."

However, according to Laffont, she subsequently learned that the Globe typically appeared on newsstands on Mondays and that the March 22 issue would thus go on sale March 14.[1] Sygma thereafter commenced suit in state court and moved for a preliminary injunction. The motion was granted, ordering Globe to notify all of its wholesalers and distributors that the March 22, 1983 issue of the Globe should not go on sale until March 15, 1983, and enjoining Globe and its agents from publicly displaying or selling the issue before the embargo date. On April 5, 1983, defendant removed this action to federal court pursuant to 28 U.S.C. §§ 1332 and 1441.

Sygma thereafter filed certificates of copyright registration with respect to the four photographs at issue, indicating Graham as copyright owner. Pursuant to an agreement drafted by Sygma and signed by Graham on May 12, 1983, Graham assigned the copyrights in the photographs to Sygma "for the sole and exclusive purpose of prosecuting" copyright · infringement claims against Globe and Globe-related companies. Sygma agreed to assign the copyrights back to Graham at the conclusion of the action and to donate any sums recovered in the action "to charity as directed by Graham."

### Discussion

#### 1. *Motion to amend*

Sygma has moved to amend its original complaint (1) to add copyright and Lanham Act claims and (2) to add as defendants two Globe-affiliated companies. With regard to the copyright claims, Globe urges that the court deny leave to amend on the ground that the alleged assignment of copyright from Graham to Sygma failed for two reasons: (1) Graham had no rights to assign, and (2) even assuming that he had copyright in the photographs, the assignment was void under public policy.

---

**1.** Sygma now claims that the relevant issue of the Globe began appearing on newsstands on

March 11, 1983.

**1156**

■ Globe claims first that, in view of the supervision and rights of approval exercised by Buckingham Palace, the Prince William photographs are "works for hire" within the meaning of the Copyright Act of 1976, 17 U.S.C. § 101 et seq. ("a work prepared by an employee within the scope of his or her employment"). According to Globe, Graham took the photographs as an employee of Buckingham Palace, which as the employer "owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b).

However, if (as Sygma contends) Graham shot the photographs on "special order" or "commission" from Buckingham Palace, copyright ownership will vest in Graham unless "the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101.[2] It is undisputed that no such written instrument exists.

In determining whether Graham created the photographs "on commission" or as an "employee," the extent to which Buckingham Palace controlled the creation of the works is determinative. A formal or regular relationship of employment is not a necessary condition for "employee" status within the meaning of section 101. See Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir.), cert. denied, — U.S. ——, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984). The Second Circuit in Aldon framed the issue in this manner: "is the contractor 'independent' or is the contractor so controlled and supervised in the creation of the particular work by the employing party that an employer-employee relationship exists." 738 F.2d at 552.

In Aldon, the court affirmed a jury verdict for a "hiring author" who "actively supervised and directed the creation" of statuettes by contracting artisans. "While he did not physically wield the sketching pen and sculpting tools, he stood over the artists and artisans at critical stages of the process, telling them exactly what to do." 738 F.2d at 553. There is little evidence of a "hiring author" in this case. The present facts are closer to those in Childers v. High Society Magazine, Inc., 557 F.Supp. 978, on reargument, 561 F.Supp. 1374 (S.D.N.Y.1983). In Childers, the plaintiff-photographer shot photographs of well-known actresses, at their request, and had expressly agreed to certain conditions regarding the distribution of the work. The Childers court found that the photographer's deference to his celebrity subjects did not render the photographs "works for hire."[3] Such deference seems even more warranted where, as here, the photographer's subjects are not publicity-seeking actresses but members of royalty.

Accordingly, the court cannot find on the present record that Graham's "understanding" with Buckingham Palace proves the existence of an employer-employee relationship. Defendant's opposition to plaintiff's motion to amend on this ground therefore fails.

■ Defendant next contends that, even if Graham owned the copyright in the photograph, his assignment of copyright to Sygma for the conceded purpose of prosecuting this action is void under New York's champerty law, N.Y.Jud.Law § 489. That section prohibits any corporation from taking an assignment in any claim "with the intent and for the purpose of bringing an action or proceeding thereon...."[4]

Against Globe's claim that the assignment of copyright in this case falls squarely within the language of N.Y.Jud.Law

---

**2.** This treatment of commissioned works represents a substantial departure from pre-1976 law. See 1 Nimmer on Copyright, § 5.03(B) at 5–24 (1983).

**3.** Stating that "[d]efendants can not possibly assert that plaintiff is an 'employee' of either [actress]," the court in Childers analyzed the case under the "special order" or "commission" subparagraph of section 101. 557 F.Supp. at 984.

**4.** It is not disputed that state law governs the validity of an assignment challenged on grounds of champerty. See Martin v. Morgan Drive Away, Inc., 665 F.2d 598, 604–05 (5th Cir.), cert. dismissed, 458 U.S. 1122, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982).

§ 489, Sygma primarily argues that the assignment does not violate the spirit of the law prohibiting champerty. Sygma also discounts the relevance of those cases cited by Globe in which assignments were voided on the basis of champerty—notably *American Optical Co. v. Curtiss*, 56 F.R.D. 26 (S.D.N.Y.1971)—on the ground that the voided assignments there were between "total strangers," the assignees having "no connection or involvement" with the transaction giving rise to the claims assigned.

Sygma has not cited, and the court is not aware of, any case expressly holding that a prior relationship between the parties may save an assignment made solely for the purpose of litigation. *Cf. American Express Co. v. Control Data Corp.*, 50 A.D.2d 749, 376 N.Y.S.2d 153, 154 (App. Div.1975) (assignment of claim upheld as "an incident to a substantial commercial transaction" between the parties). However, a review of the precedents, considered in the light of the underlying purpose of section 489, persuades the court that Graham's assignment to Sygma survives scrutiny under the champerty doctrine.

In *Fairchild Hiller Corp. v. McDonnell Douglas Corp.*, 28 N.Y.2d 325, 321 N.Y. S.2d 857, 860, 270 N.E.2d 691, 694 (1971), the New York Court of Appeals stated that the "legislative concern" reflected in section 489 "is clear": "[t]o prevent the resulting strife, discord and harassment which could result from permitting attorneys and corporations to purchase claims for the bringing of actions thereon...." The present statute dates from a penal law enacted in 1909, but champerty itself is an "extremely ancient doctrine which developed early in the history of the common law [and] whose roots go back even further." *Martin v. Morgan Drive Away, Inc., supra* n. 3, 665 F.2d at 603. The Second Circuit has defined champerty as "a bargain between a stranger and a party to

a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds." *Alexander v. Unification Church of America*, 634 F.2d 673, 677 n. 5 (2d Cir.1980) (applying New York law). Although section 489 does not by its terms limit its operation to assignments of claims undertaken by strangers for a share of the judgment proceeds, the situation described in *Alexander* is plainly the evil that the statute sought to prohibit.

In this regard, it is significant that Sygma's association with Graham long preceded this suit and that the assignment agreement stipulates that any recovery will be donated to a charity of Graham's choosing. All the evidence before the court indicates that Sygma undertook the assignment not for mercenary reasons but rather to vindicate the rights of a photographer who had relied on Sygma, his agent, to police unauthorized publication of his work.[5] Section 489 should not void an assignment to a plaintiff who, like Sygma, "had such a relationship with its assignor as to give it a substantial and legitimate interest on the transactions involved in the suit." *American Express Co. v. Control Data Corp., supra*, 376 N.Y.S.2d at 154.

■ Moreover, Globe's reliance on the letter of the statute is misplaced. Section 489 prohibits assignments "for the purpose of *bringing* an action" (emphasis added) and thus, read strictly, extends only to the "transfer of claims prior to the institution of any proceeding or action." *Rosenkrantz v. Berlin*, 65 Misc.2d 320, 317 N.Y. S.2d 704, 705 (Sup.Ct.1971). The instant assignment of copyright occurred after Sygma had already filed suit and obtained preliminary relief. In view of the fact that the assigned claims are asserted in an action "which [has] been commenced and the mischief the statute seeks to avoid is nonexistent," *id.*, Globe's champerty objections fail.[6]

---

5. *See*, for example, Sygma letter to Graham dated April 5, 1983 (necessary for Sygma to proceed in behalf of Graham "because, as a professional photographer and a non-U.S. resident, it would be virtually impossible to schedule court

dates around your availability in the United States").

6. Accordingly, the court need not address Sygma's claim of waiver.

■ Sygma also seeks leave to plead in its amended complaint that Globe falsely described the source of the photographs in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125. Globe, however, argues that plaintiff's proposed complaint does not adequately state a Lanham Act claim on the ground that it fails to allege that prospective purchasers were deceived. *See Skil Corp. v. Rockwell International Corp.*, 375 F.Supp. 777, 783 (N.D.Ill.1974). Sygma has not filed any papers in opposition to Globe's objections. Because the proposed complaint does not sufficiently allege essential elements of a Lanham Act violation, the court denies Sygma leave to include in its amended complaint a Lanham Act claim in the form now proposed.

■ Finally, Sygma moves to add as defendants two Globe-related entities, Globe Communications Corp. and Summit Publishing Co. ("Summit"), based on the publication of one of the Prince William photographs in the April 5, 1983 issue of the Summit tabloid, "Your Health and Medical Bulletin." Sygma alleges that Summit's publication of a photograph previously published in the Globe was unauthorized in view of an alleged "one-time use only" restriction with regard to each photograph supplied to Globe. Globe denies that any such restriction existed and on that basis opposes the motion to add new parties. However, since the court cannot at this time find that Sygma's proposed claim against these new parties is groundless, plaintiff is granted leave to amend its complaint in this respect.

For these reasons, plaintiff's motion for leave to file an amended complaint is granted to the extent that such amended complaint alleges claims of copyright infringement against Globe, Globe Communications Corp., and Summit (the third, fourth, fifth, sixth, and seventh claims in the proposed complaint). Sygma's motion is denied in all other respects.[7]

### 2. *Motions for Summary Judgment*

■ The parties have cross-moved for summary judgment with regard to the claims of copyright infringement. Sygma asserts that no genuine issue of material fact exists with regard to its claim that Globe infringed Graham's copyright in the four Prince William photographs when certain copies of the March 22 issue appeared on newsstands before the March 15 embargo date. For its part Globe asserts that the present record proves that it complied with the terms of its written commitment regarding the embargo date. Arguing that such terms must be viewed "in the light of unquestioned publishing industry custom and usage," Globe has submitted affidavits that the words "on sale," according to accepted industry meaning, refer to the date the publisher recommends to its independent retailers for selling the new issue, not the date that such retailers may actually choose for the sale.[8] According to Sygma, however, Globe understood its obligations

---

7. The first two claims of the proposed amended complaint track the language of the original complaint alleging state law claims of fraud and undue enrichment. Reasoning that the "gravamen" of plaintiff's claims here is injury for unauthorized publication—a right protected under federal copyright law—Globe contends that the state law claims are pre-empted under the Copyright Act, 17 U.S.C. § 301. *See Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 201 (2d Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984). Sygma apparently concedes the point, but asks that the two claims be read to allege wilful infringement under the statute. Such a construction does not seem appropriate in view of the language of the claims and the statement in the proposed amended complaint that the court's subject matter jurisdiction depends in

part on principles of pendent jurisdiction. Moreover, to the extent that the two claims may be read as federal claims, the claims are merely duplicative. Accordingly, plaintiff's first two claims must be dismissed. Plaintiff's request for punitive damages is also stricken, since only "actual" damages are available under the copyright statute. *See Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir.1983).

8. Globe relies heavily on the fact that the tabloid is distributed by independent wholesalers and retailers, and thus the precise date of sale is arguably beyond Globe's control. However, the issue of publisher-distributor control is not dispositive, for the absence of any such control may have obligated Globe to feature the Prince William photographs in a later issue to assure compliance with the embargo date.

under the license agreement to require more than the recommendation of a sale date, as evidenced by the letters and mailgrams Globe sent distributors as a result of Sygma's demands for compliance with the embargo date.

The meaning of the terms of the agreement is thus a matter in sharp dispute. Because each party's submissions in this regard evidence a genuine issue of material fact, summary judgment is plainly inappropriate. The cross-motions are therefore denied in all respects.[9]

### 3. *Motion to dismiss counterclaims*

■ Sygma has moved pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss Globe's counterclaims alleging, *inter alia*, that Sygma agreed to license publication rights in the photographs for the Globe's March 22 issue; that Sygma agreed not to license the photographs to the Globe's competitors; that Sygma thereafter sought to deprive Globe of its bargained-for benefits by bringing an action in state court and obtaining an injunction; and that, as a result of Sygma's harassment, Globe was damaged, incurring legal fees, lost sales, and other injuries. In deciding a motion to dismiss for failure to state a claim, a court must accept as true all material allegations of the non-movant. *See Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). A Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that [non-movant] can prove no set of facts in support of his claim that could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Construed under these liberal standards, Globe's allegations suffice to state claims, in the alternative, for abuse of process and prima facie tort. *See Board of Education v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975).

*Conclusion*

For the foregoing reasons, Sygma's motion for leave to file an amended complaint is granted as to the statutory copyright claims. Sygma's motion to add new party defendants also is granted. All motions are denied in all other respects.

So Ordered.

---

**9.** Disputed issues of fact regarding the terms of the license also preclude granting Globe's cross-motion to the extent that it seeks the dismissal of Sygma's claim that Summit's publication of one of the photographs violated an alleged "one-time use" condition in the copyright license.