NADEL & SONS TOY CORP., Plaintiff,

v.

WILLIAM SHALAND
CORPORATION, Defendant.

No. 85 Civ. 5108 (SWK).

United States District Court,
S.D. New York.

March 7, 1987.

Peter Cobrin, Cobrin and Godsberg, New York City, for plaintiff.

Andrew Goodman, Rosner and Goodman, New York City, for defendant.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This is an action for relief from copyright infringement. Jurisdiction is invoked pursuant to Title 17 of the United States Code and 28 U.S.C. Section 1338(a). Plaintiff asks that defendant be preliminarily and permanently enjoined, pursuant to 17 U.S.C. Section 502, from infringing plaintiff's alleged copyright in a "fanciful inflatable unicorn animal" ("the Unicorn"). Plaintiff also asks that defendant be required, pursuant to 17 U.S.C. Section 503, to deliver for impounding during the pendency of the action, all allegedly piratical copies of plaintiff's allegedly copyrighted work and all instruments used to create such works. Plaintiff also seeks an order requiring defendant to recall from its customers all of the allegedly piratical works. Finally, plaintiff seeks appropriate damages and expenses. Defendant counterclaims for damages and injunctive relief relating to plaintiff's alleged importation and sale of another soft sculpture product which defendant has allegedly copyrighted.

This case is presently before this Court on defendant's motions (1) for summary judgment dismissing the complaint on the ground that plaintiff's copyright registra-

tion is invalid because plaintiff did not create the copyrighted unicorn design, and the creator of the design was not working pursuant to a work made for hire agreement; (2) to strike plaintiff's complaint and reply to counterclaims under Rule 37 of the Federal Rules of Civil Procedure, and to impose sanctions on plaintiff under Rule 11 of the Federal Rules of Civil Procedure because of plaintiff's alleged continuing failure to produce documents which plaintiff has been directed to produce; and alternatively (3) to disqualify plaintiff's counsel because he should be a witness in this action.

*Summary Judgment*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). The Court's role is to determine whether there are issues to be tried. *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Heyman, supra,* 524 F.2d at 1320. The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact. The Court's findings of fact are detailed below.

## FACTS

Plaintiff, Nadel & Sons Toy Corp. ("Nadel") is a New York corporation with its principal office and place of business at 915 Broadway, in Manhattan. Defendant, William Shaland Corp. ("Shaland"), is a New York corporation with its principal place of business at 1115 Broadway in Manhattan.

In 1981, plaintiff met with a representative of one of its suppliers, the Standard Merchandise Company ("Standard"), located in Tapei, Taiwan. The meeting took place in Tapei. Plaintiff's president, an artist employed by Standard, and one Standard executive were present at this meeting.[1] During the course of the meeting plaintiff's president discussed the creation of the Unicorn by the artist. Plaintiff's president testified that he discussed the colors of the Unicorn with Standard employees. He stated that he told the artist that he wanted the colors to be very bright, but that he did not specify which colors he desired. (Plaintiff Dep. at 9). Plaintiff's president stated that he also discussed the shape of the Unicorn at that meeting and that he gave a "description of what (he) .. thought the unicorn should look like." Plaintiff's president also stated that he "would surely" have told the artist "to put a goldish horn" on the Unicorn (Plaintiff Dep. at 11).

Plaintiff's president also testified that, after a sample of the Unicorn was completed by Standard's artist he instructed the artist regarding the colors of the unicorn and its mane. Upon further questioning, however, plaintiff's president indicated that he did not remember if he requested changes after the first sample or what the requested changes were. Plaintiff has also submitted a declaration which states that he described to Standard personnel the shape of the unicorn, the design of the Unicorn and the coloration of the unicorn

---

1. Plaintiff's president does not remember the name of the artist or which Standard executive was present at this meeting. (Plaintiff Dep. at 7).

and also that he directed that there be gold horns, how the mane was to be shaped, what the stance would be, and how the curlicues of the tail would be shaped.

On January 14, 1983 the plaintiff registered the Unicorn with the United States Register of Copyrights. The registration statement provides that the Unicorn is a "work made for hire."

Beginning in about 1982, defendant has imported, offered for sale, and sold an inflated toy in the shape of a Unicorn. Plaintiff alleges that these acts violate its copyright in the Unicorn.

*Work Made for Hire*

The Copyright Act provides:

A work made for hire is

(1) a work prepared by an employee within the scope of his or her employment; or

(2) a work specifically ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101.

■ Plaintiff's claim that the Unicorn is a work made for hire is necessarily based on it being a "work prepared by an employee within the scope of his or her employment" because there is no written contract between Nadel and Standard for the creation of the Unicorn. It is established that a formal or regular relationship of employment is not a necessary condition for employee status within the meaning of the Copyright Act. *Sygma Photo News, Inc. v. Globe International Inc.*, 616 F.Supp. 1153, 1156 (S.D.N.Y.1985) (citing *Aldon Accessories Ltd. v. Spiegel, Inc.*, 738 F.2d 548 (2d Cir.), *cert. denied* 469 U.S. 982, 105

S.Ct. 387, 83 L.Ed.2d 321 (1984)). In this Circuit, the essential factor in determining whether a work is made by an employee for hire is whether the employer has the right to direct and supervise the actual performance of the work, and whether he or she actually exercises that right. *Schmid Bros. v. W. Goebel Porzellanfabrik*, 589 F.Supp. 497, 503 (E.D.N.Y.1984) (works were not for hire where artist, not employer, exercised "control"); *Aldon Accessories, Ltd. v. Spiegel, Inc.*, 738 F.2d 548 (2d Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 387, 83 L.Ed.2d 321 (1984) (artists were employees "for hire" where the "hiring author" stood over the artists and artisans at critical stages of the (creative) process telling them what to do).

■ Defendant presents plaintiff's president's deposition in support of its claim that the Unicorn is not a work made for hire and hence not the plaintiff's copyrighted work. Defendant has thus not met its initial burden of demonstrating the absence of any genuine issue of material fact. Plaintiff's president's deposition indicates not only that the final decisions relating to creating the Unicorn were under plaintiff's control, but also that plaintiff may have exercised this control by instructing changes on subsequent samples.[2] Plaintiff's level of involvement in the creation of the Unicorn is a material fact still at issue in this case and best resolved at trial.

Defendant's motion for summary judgment is thus DENIED.

*Disqualifications of Plaintiff's Attorney Under DR5–101*

■ Disciplinary Rule ("DR") 5–102(A) of the American and New York State Bar Association's Code of Professional Responsibility provides,

if, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial

---

**2.** Because defendant has not met its initial burden, the Court need not consider here plaintiff's president's subsequent affirmation, despite its apparently conclusory allegations and inconsistencies.

and his firm, if any, shall not continue representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

DR 5–101(B) provides,

A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter;

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer for his firm to the client;

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in a particular case.

Under these rules, in this Circuit lawyers who have become "intimately involved" in their client's business and who ought to be called as witnesses because their testimony has become important to their clients are disqualified. *MacArthur v. Bank of New York,* 524 F.Supp. 1205, 1206–1207 (S.D.N.Y.1981); *see also J.P. Foley & Co. v. Vanderbilt,* 523 F.2d 1357 (2d Cir.1975).

If plaintiff's attorney, however, is required to testify in this case it will be regarding registration of the copyright for the Unicorn. Registration of a copyright is essentially ministerial in nature, *Eltra Corp. v. Ringer,* 194 U.S.P.Q. 198 (E.D.Va.1976), *aff'd* 579 F.2d 294 (4th Cir.1978) and thus any testimony counsel may give dealing with the registration "will relate solely to a matter of formality" and is not grounds for disqualifying counsel, DR 5–101(B)(2).

Defendant's motion to disqualify plaintiff's attorney under DR 5–101(B) is thus DENIED.

*Discovery Sanctions*

Defendant alleges that plaintiff has failed to comply with several discovery requests in violation of the Federal Rules of Civil Procedure regarding discovery. Defendant moves to strike plaintiffs' complaint and reply to counterclaims pursuant to Rule 37 of the Federal Rules of Civil Procedure and for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Plaintiff cross moves for Rule 11 sanctions because plaintiff brought the summary judgment discussed herein.

Dismissal is too drastic a remedy for the alleged discovery violations. Defendant's motion for Rule 37 sanctions is DENIED and this case will be referred to a magistrate for discovery purposes. Both motions for Rule 11 Sanctions are DENIED.

SO ORDERED.